In re EUGENE ALEXANDER, INC., Debtor.

In re Alexander Charles WALLACE, Debtor.

In re Eugene STUTZMAN, Debtor.

Bankruptcy Nos. 94–01747–8C7, 94–02545–8C7 and 94–02547–8C7.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Aug. 19, 1994.

Michael Moran, Joy & Moran, Sarasota, Florida, for debtors, Eugene Alexander, Inc., Alexander Charles Wallace and Eugene Stutzman.

Robert E. Messick, Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., Sarasota, Florida, for Enterprise National Bank of Sarasota.

Traci Strickland, Trustee, St. Petersburg, Florida, for Wallace and Stutzman.

Bernard J. Morse, IV, Bernard J. Morse, P.A., Tampa, Florida, for Traci Strickland, Trustee.

Larry S. Hyman, Trustee, Tampa, Florida, for Eugene Alexander, Inc.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING CONVERSION TO CHAPTER 11

### C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

### I. PROCEDURAL BACKGROUND.

These are three separate Chapter 7 bankruptcy cases initiated by Eugene Alexander, Inc., a Florida corporation, Alexander Charles Wallace, and Eugene Stutzman, respectively, as debtors. The corporate debtor, Eugene Alexander, Inc., filed a voluntary petition under Chapter 7 on February 23, 1994, and, subsequently, the individual debtors, Alexander Charles Wallace and Eugene Stutzman, filed separate voluntary petitions under Chapter 7 on March 15, 1994.

On April 29, 1994, the corporate and individual debtors filed separate motions, in each case, to convert their Chapter 7 cases to cases under Chapter 11 of the Bankruptcy Code pursuant to the provisions of 11 U.S.C. § 706(a). None of the three Chapter 7 cases had previously been converted under Section 1112, 1307, or 1208 of the Bankruptcy Code. The motions filed by each of the three debtors in their separate Chapter 7 cases were contested by the written objection of Enterprise National Bank of Sarasota (hereinafter "Enterprise") dated May 17, 1994. The debtors' motions to convert their Chapter 7 cases to cases under Chapter 11, and the written objections of Enterprise, came on for hearing before the court on June 16, 1994, and the court treated the hearing on debtors' motions to convert and the objections thereto as a preliminary pretrial and scheduling conference.

On the basis of the issues raised by the written objection of Enterprise to debtors' motions to convert from cases under Chapter 7 to cases under Chapter 11, the court determined that, if cause exists to dismiss or convert debtors' cases under Section 1112 of the Bankruptcy Code, the court would not order conversion of debtors' Chapter 7 cases to Chapter 11 cases under Section 706(a) of the Bankruptcy Code. By order dated June 21, 1994, the court determined that the issues requiring trial were whether or not each debtor has a reasonable likelihood of rehabilitation and has the ability to effectuate a Chapter 11 plan, and whether, in each case, there has been fraud and dishonesty by the debtor (or debtor's management in the corporate case of Eugene Alexander, Inc.). The court consolidated the three contested motions for the purposes of discovery and trial, and a consolidated final evidentiary hearing was completed on Friday, July 22, 1994.

At the hearing, only Enterprise offered testimony and evidence. Counsel for the debtors, Michael Moran, appeared and cross examined Enterprise's witnesses, but neither the individual debtors nor a representative of the corporate debtor appeared or testified.

### II. FINDINGS OF FACT.

#### A. Reorganization Possibilities.

On the basis of the testimony presented by creditor, Enterprise, the court is satisfied that Enterprise has, by a preponderance of the evidence, established that, with respect to each of the three debtors, there is no reasonable likelihood of rehabilitation and there is no ability to effectuate a Chapter 11 plan.

#### 1. Eugene Alexander, Inc.

The court finds that the corporate debtor has been out of business and completely shut down for a period of almost one calendar year. The court further finds that debtor's management, being the individual debtors, Alexander Charles Wallace and Eugene Stutzman, who at all relevant times were persons in actual control of the debtor, began, at the end of June 1993 and the beginning of July 1993, to take the inventory out of the corporate debtor's place of business and to secret it to other locations with the intent of ceasing all further corporate operations. The remaining corporate assets were liquidated and sold by Enterprise as a secured creditor of Eugene Alexander, Inc., in November, 1993. The remaining assets of the corporate debtor, which includes one sewing machine and some dresses, do not provide any reasonable opportunity for the corporate debtor to get back on its feet and to get back into business. Without an ongoing business, rehabilitation is unlikely.

### 2. *Alexander Charles Wallace.*

The debtor has been unemployed for over one year, has no income, and no evidence was presented to suggest that this debtor could effectuate and confirm a Chapter 11 plan. Although this debtor owns some pieces of real property, these would not form the nucleus around which a reorganization could be successfully confirmed.

### 3. *Eugene Stutzman.*

The schedules and statements of this debtor reveal no basis upon which a Chapter 11 plan could be successfully proposed, confirmed, or implemented. This debtor is also unemployed and has no visible means of support.

### B. *Fraud and Dishonesty.*

The court finds that, with respect to the issues of fraud and dishonesty, Enterprise has, by a preponderance of the evidence, clearly established that there has been fraud and dishonesty on the part of both the individual debtors, Alexander Charles Wallace and Eugene Stutzman, as well as by said individuals in their roles of management and persons in control of the corporate debtor, Eugene Alexander, Inc.

### 1. *Eugene Alexander, Inc.*

Testimony of Michael Brunner clearly establishes that the individual debtors, Alexander Charles Wallace and Eugene Stutzman, as management of the corporate debtor, secreted a substantial amount of corporate assets immediately preceding the corporation's cessation of operations in June/July 1993. Some of those assets, secreted and transferred by corporate management, were located in a storage facilities leased by an individual purporting to be Gregory Barca and an individual purporting to be Eugene Stutzman. These assets, as confirmed by the report submitted by the appraiser employed by the Chapter 7 corporate trustee, Larry S. Hyman, included 150 or more dresses manufactured by the corporation, as well as dress materials, fabrications, sewing machines and the like. Alexander Charles Wallace posing as Gregory Barca entered into a lease for a storage facility and paid rent on the storage facility until April 1994, which was subsequent to filing of the Chapter 7 petitions by both the corporation and the individual debtors. The corporate Chapter 7 trustee testified that debtor's management, Alexander Charles Wallace and Eugene Stutzman, had been afforded every opportunity at their Section 341 creditors meetings to disclose the transfer and/or secreting of corporate assets and had failed to do so. The statement of financial affairs and schedules, as filed by the corporate debtor, executed by Eugene Stutzman as president of corporate debtor, failed to disclose or to detail the transfer of any corporate assets prior to the corporate Chapter 7 filing in February 1994. The corporate debtor's statement of financial affairs and schedules did not disclose any of the inventory of dresses, materials and equipment which were discovered in the storage facility in Sarasota, Florida.

### 2. *Alexander Charles Wallace.*

The testimony presented by numerous witnesses and documentary evidence clearly established a pattern of undisclosed and fraudulent transfers of assets, both during the one year immediately preceding his Chapter 7 filing and continuing thereafter. The testimony of Gregory Barca, a former friend of debtor, Alexander Charles Wallace, clearly established that Gregory Barca had not authorized debtor, Alexander Charles Wallace, to utilize his name and/or identity for the purposes of purchasing assets, including automobiles in the State of Florida, either in partnership or on his own behalf. Certified copies of automobile records from the Florida Department of Motor Vehicles, Tallahassee, Florida, evidenced that six or more motor vehicles had been acquired and/or titled and/or transferred in the name of Gregory Barca during the period from March 15, 1993, continuing through to June 1994. Testimony of Gregory Barca clearly established that he had not participated or authorized any of these purchases, sales and transfer transactions involving these automobiles. Testimony of Donald Winter and Rodney Desberg clearly evidence that debtor, Alexander Charles Wallace, had held himself out as one Gregory Barca for the purposes of selling and transferring at least one or more motor vehicles during March 1994, specifically a 1967 four-door Jaguar automobile. All

of these transactions were effected for the purpose of hiding, secreting, and concealing these assets from creditors and the trustee.

Testimony of Ronald Desberg further evidences that debtor, Alexander Charles Wallace, utilized the assumed name of Gregory Barca in renting separate mini-storage bins for purposes of secreting and/or transferring both individual assets, as well as the assets of the corporate debtor, Eugene Alexander, Inc. There was also testimony from Sherry Bouchie about additional mini-storage bins rented for this purpose. Testimony of the trustee, Traci Strickland, appointed in debtor's Chapter 7 case, as well as testimony of Robert Bonnell, the appraiser employed by the trustee, clearly evidences the actions and efforts of debtor, Alexander Charles Wallace, in concealing, secreting and transferring of assets, both individual assets and corporate assets of Eugene Alexander, Inc. These individual assets of Alexander Charles Wallace include extensive collections of antique clocks and furnishings.

Deposition testimony of Sarah Contomichalas of Christie, Manson & Woods, Intl., Inc., d/b/a Christie's East, New York, New York, on July 8, 1994, clearly evidences that debtor, Alexander Charles Wallace, consigned certain antiques with said business in November 1993. At least one antique consignment sale by Christie's East failed to be disclosed by debtor, Alexander Charles Wallace, and the evidence presented by said deposition testimony further confirms that debtor failed to disclose the transfer of the remaining antique consignment assets from Christie's East in New York to Bijan Royal Antiques in New York City during March 1994. Deposition testimony of Bijan Nassi on July 15, 1994, further evidences that debtor, Alexander Charles Wallace, failed to disclose or to turnover the proceeds from the sale of such remaining consignment antiques, with the proceeds of said sale being postpetition assets of debtor totaling in excess of $10,000.00 in cash.

### 3. *Eugene Stutzman.*

The testimony of Michael Brunner clearly established that Eugene Stutzman acted in concert with Alexander Charles Wallace with respect to the transferring and secreting of corporate assets of Eugene Alexander, Inc., beginning in June 1993 and continuing thereafter. Michael Brunner's testimony confirms that Eugene Stutzman took an active role in transfer of corporate assets, as well as continuing efforts of both individual debtors to secret and to conceal both assets of Eugene Alexander, Inc., as well as Alexander Charles Wallace and Eugene Stutzman. A mini-storage bind was rented in Sarasota under Eugene Stutzman's name for this purpose. Deposition testimony of the records custodian of Century Bank FSB, Becky Stemitz, on July 14, 1994, and checks and other documentary evidence provided by said deposition, clearly establish that Eugene Stutzman took part and benefitted from secreting, transferring and sale of Alexander Charles Wallace's individual assets and deposit of cash proceeds from such asset sales. Eugene Stutzman failed to disclose any such asset transfers and sales, and utilization of sales proceeds, in his statements and schedules as filed with the court in his Chapter 7 case. Testimony of the trustee in Eugene Stutzman's Chapter 7 case, Traci Strickland, clearly evidences that Eugene Stutzman was provided ample opportunity to disclose any such asset transfers or asset sales at any one of the five scheduled Section 341 creditors meetings. Testimony of Traci Strickland clearly evidences that Eugene Stutzman did not cooperate with the trustee in any such disclosures, nor did Eugene Stutzman cooperate with the trustee and her authorized appraiser, Robert Bonnell, in turnover of individual assets of either Eugene Stutzman or Alexander Charles Wallace.

### III. *CONCLUSIONS OF LAW.*

The court has jurisdiction of the parties and the subject matter pursuant to the provisions of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and the standing order of reference entered by the district court. These are core proceedings within the meaning of 28 U.S.C. § 157(b) and are contested matters governed by F.R.B.P. 9014.

■ Each of the three debtors is entitled to convert the debtor's Chapter 7 case to a case under Chapter 11 pursuant to the provi-

sions of Section 706(a) of the Bankruptcy Code. The court should nevertheless not permit conversion if "cause" exists to convert a Chapter 11 case to a case under Chapter 7 or to dismiss a Chapter 11 case pursuant to the provisions of Section 1112(b) of the Bankruptcy Code. To permit conversion to Chapter 11 in those circumstances would be futile and a wasted act.

■ In opposing conversion in these circumstances, the objecting creditor, Enterprise, must prove by a preponderance of the evidence that cause exists within the meaning of Section 1112(b). None of the debtors has the burden of production or persuasion on this issue. In other words, no debtor is required to establish entitlement to conversion by providing that cause does not exist.

■ In the case of Eugene Alexander, Inc., the court finds that cause exists within the meaning of Section 1112(b) because the corporate debtor has no likelihood of rehabilitation and has no ability to effectuate a Chapter 11 plan. The court further finds that cause exists because there has been fraud and dishonesty by debtor through its management, Alexander Charles Wallace and Eugene Stutzman, in that this debtor (acting through each of the two individuals) has hindered, delayed, and defrauded creditors and the Chapter 7 trustee by transferring and concealing its property within one year before the filing of its petition and property of the estate after the filing of the petition.

■ In the case of Alexander Charles Wallace, the court finds that cause exists within the meaning of Section 1112(b) because the debtor has no reasonable likelihood of rehabilitation and has no ability to effectuate a Chapter 11 plan. Further, the court finds that cause exists because there has been substantial fraud and dishonesty by Alexander Charles Wallace in that this debtor has hindered, delayed, and defrauded creditors and his Chapter 7 trustee by transferring and concealing his property within one year before the filing of his petition and property of the estate after the filing of the petition.

In the case of Eugene Stutzman, the court finds that cause exists within the meaning of Section 1112(b) because this debtor has no reasonable likelihood of rehabilitation and has no ability to effectuate a Chapter 11 plan. Further, the court finds that cause exists because there has been substantial fraud and dishonesty by Eugene Stutzman in that this debtor has hindered, delayed, and defrauded creditors and the Chapter 7 trustee in the Alexander Charles Wallace case by assisting and aiding Alexander Charles Wallace to transfer and conceal Wallace's property within one year before the filing of Wallace's petition and property of the Wallace estate after the filing of the Wallace petition.

In each of the cases of Alexander Charles Wallace and Eugene Stutzman, the court further finds that cause within the meaning of Section 1112(b) exists because of the fraud and dishonesty committed by each debtor as a person in control of the corporate debtor, Eugene Alexander, Inc.

The creditor, Enterprise, has established each instance of cause found above by a preponderance of the evidence.

The court therefore concludes that each motion to convert filed by the debtors in their respective Chapter 7 cases should be denied. Pursuant to the provisions of F.R.B.P. 9021, the court is contemporaneously entering in each case a separate final order denying the respective motions to convert. Each case will therefore continue as a case under Chapter 7.

DONE AND ORDERED.