**Walter E. LESNIAK and Wendi M. Lesniak, Debtors.**

**Bankruptcy No. 96 B 52794.**

United States Bankruptcy Court,
N.D. Illinois,
Western Division.

May 13, 1997.

Richard Chang, Law Offices of Peter F. Geraci, J.D., Chicago, IL, for debtors.

Joseph D. Olsen, Chapter 7 Trustee.

### MEMORANDUM OPINION

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This matter came before the Court on the Motion of the Debtors, Walter and Wendi Lesniak, to convert their Chapter 7 case to Chapter 13 ("Motion to Convert").

## BACKGROUND

The Debtors filed for relief under Chapter 7 of the Bankruptcy Code ("Code") on October 24, 1996. The Debtors listed the following items of personal property in Schedule B:

| Description of Property | Market Value |
| --- | --- |
| # 2 Harris Bank—Checking—No balance kept | NONE |
| # 4 Miscellaneous household goods & furnishings, tv, vcr, stereo 3 bedrooms, lamps, couch, entertainments ctr, dining table | $1,000 |
| # 6 Miscellaneous used/old clothing apparel | $500 |
| # 7 Wedding rings | $500 |
| # 9 Insurance—Whole Life—Already borrowed against | NONE |
| # 11 Pension w/ Employer—100% Exempt 401K | UNKNOWN |
| # 12 Motorola Stock | $500 |
| # 23 First Natl—1994 Blazer | $7,500 |
| 1992 GMC Jimmy (over 100,000 miles, body damage) | $4,000 |
| # 33 Sears—Snow blower, tires | $200 |

The Debtors also claimed the following exemptions in Schedule C:

| Description of Property | Value of Exemption |
| --- | --- |
| Real Property—735 ILCS 5/12–901 | $15,000 |
| Miscellaneous household goods and furnishings 735 ILCS 5/12–1001(b) | $900 |
| Wearing apparel—735 ILCS 5/12–1001(b) | $500 |
| Wedding rings—735 ILCS 5/12–1001(b) | $500 |
| Pension W/ Employer—100% Exempt—401K 735 ILCS 5/12–1006 | UNKNOWN |
| Motorola Stock—735 ILCS 5/12–1001(b) | $500 |
| 1994 Chevy Blazer | $500 |
| 1992 Jimmy | |
| 735 ILCS 5/12–1001(c) | $2,400 |
| 735 ILCS 5/12–1001(b) | $1,600 |

The Debtors received a discharge on February 13, 1997. Subsequent to the Order of Discharge, on February 27, 1997, the Debtors filed the following amendments to Schedules B and C:

Schedule B:

| Description of Property | Market Value |
| --- | --- |
| # 2 Harris Bank—Checking | NONE |
| # 4 Miscellaneous household goods & furnishings, tv, vcr, stereo 3 bedrooms, lamps, couch, entertainments ctr, dining table | $1,000 |
| # 6 Personal Used Clothing | $500 |
| # 7 Wedding rings | $500 |
| # 9 Country Whole Life Policy | $320 |
| Northwestern Mutual Life Whole Policy | $4,382 |
| # 11 None | |
| # 12 None | |
| # 23 1994 Blazer (Lien of $7,500 against this vehicle) | $12,500 |
| 1992 GMC Jimmy—Over 100,000 miles and body damage | $2,500 |

| Description of Property | Market Value |
| --- | --- |
| # 33 None | |

Schedule C:

| Description of Property | Value of Exemption |
| --- | --- |
| Personal Used Clothing—735 ILCS 5/12–1001(b) | $500 |
| 1994 Chevy Blazer | |
| Lien of $7,500 against this vehicle | |
| 735 ILCS 5/12–1001(c) | $2,400 |
| 735 ILCS 5/12–1001(b) | $2,600 |
| 1992 GMC Jimmy | |
| 735 ILCS 5/12–1001(b) | $1,400 |

In response to the post-discharge amendments, the Trustee filed an Objection to Claim for Exemption and a Motion to Compel Turnover of Property. The Debtors then filed their Motion to Convert and the Trustee filed his formal objection. In the meantime, on March 4, 1997, First Union Mortgage Corporation filed a Motion to Modify the Automatic Stay.[1] An Order Modifying Stay was entered on March 12, 1997.

\* \* \* \* \* \*

The Debtors raise four arguments to support their Motion to Convert. The Debtors argue that they are unable to purchase the Trustee's interest in their property; that they have fallen behind on their mortgage payments; that Section 706 allows for a conversion "at any time," citing the Fifth Circuit case, *Matter of Martin,* 880 F.2d 857 (5th Cir.1989); and that Congress wants to give debtors an opportunity to repay their debts in a Chapter 13.[2]

The Trustee argues that there is not an absolute right to convert "at any time" and he points to two cases that examine the circumstances surrounding a request for conversion. The Trustee argues that courts deny conversion when circumstances indicate bad faith, abuse of the bankruptcy process or other gross inequity by the Debtor. *See In re Starkey,* 179 B.R. 687 (Bankr.N.D.Okla. 1995); *In re Jeffrey,* 176 B.R. 4 (Bankr. D.Mass.1994).

---

**1.** Modification permitted First Union Mortgage Corporation to proceed with foreclosure on the Debtors' residence located at 10615 Carl Street, Huntley, Illinois.

The Debtors list this debt as a second mortgage, but First Union Mortgage Corporation in its uncontested pleading indicates that it holds a first mortgage.

**2.** It is unfortunate that the Debtors did not give consideration to the opportunity to repay their debts in Chapter 13 *before* they filed a Chapter 7 rather than *after* the Chapter 7 Order of Discharge was entered and the Trustee discovered multiple irregularities in the information provided by the Debtors in their Voluntary Petition.

The Trustee contends that the Debtors have engaged in activities that warrant denial of their conversion request. For instance, the Trustee, in his objection to the Motion to Convert, cites several examples of abusive conduct. He points to Question #2 in Schedule B, which indicates that no balance was kept for the checking account, when on the date of filing the Debtors had over $1,700.00 in the account. In Question #9 of Schedule B, the Debtors indicate that there was no value to their insurance policy because they had borrowed against it, when $4,700.00 in cash surrender value remained in the policies.

The Trustee alleges that the Debtors grossly undervalued their 1994 Chevy Blazer. When the Trustee requested turnover of the Blazer, Debtors' attorney informed him that the Blazer had been traded in and the Debtors received over $12,000.00. At the time of the trade-in, amended schedules were not on file. Additionally, the Trustee has not received evidence that there was a lien on the Blazer.

As for the 1992 GMC Jimmy, the Trustee indicates that the Debtors changed the value of this vehicle from $4,000.00 to $2,500.00 without citing a change of circumstance, but the revision allowed them to claim a greater amended exemption for the 1994 Blazer.

The Trustee has requested information on a $9,400.00 deposit within 30 days of the bankruptcy filing. The Debtors indicate that it was a loan against a pension, but the amended schedules reflect no pension interest.

Lastly, the Trustee has been denied access to the Debtors' residence.

The Debtors, through their attorney, deny any bad faith.[3] The Debtors' attorney sup-plied "explanations" for some, but not all of the actions raised by the Trustee. He explained that the checking account was listed as no balance kept because the Debtors expended the money as soon as it was received.[4] As for the life insurance policy, the Debtors' attorney stated that the Debtors had previously borrowed money against the policy and that they had not paid the premiums. As for the non-exempt car, the Debtors say they have a problem delivering it to the Trustee in Rockford, the city in which is located the Bankruptcy Court for the Northern District of Illinois, Western Division. Finally, the Debtors would permit the Trustee access to their home, but due to their work schedules they would prefer an early morning appointment.[5]

The Debtors assert that one of the Trustee's objections would be removed if the Order of Discharge were vacated under Federal Rule of Civil Procedure ("FRCP") 60 and Federal Rule of Bankruptcy Procedure ("FRBP") 9024. Thereafter, they propose to submit a plan to pay creditors under Chapter 13.

## ISSUE

Does Section 706(a) provide the Debtors with an "absolute" right to convert their Chapter 7 case to one under Chapter 13.

## DISCUSSION

Section 706(a) states:

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

11 U.S.C. § 706(a).

At first blush, it appears that Section 706(a) provides an absolute one-time right to

---

3. For whatever reasons, the Debtors chose not to appear for the hearing. Thus, the Court must base its decision on the representations made by their attorney.

4. It may have been fortuitous that on the date of filing the Debtors had over $1,700.00 in their checking account. The Court was not provided with any information regarding the trail of disbursements of the $1,700.00, or whether the $1,700.00 remained in the account after the filing.

5. Clearly, the Debtors take lightly their duties under Chapter 7.

convert a case filed under Chapter 7. This result is reached by several courts. *Martin,* 880 F.2d at 858–59; *In re Mead,* 28 B.R. 1000, 1002 (E.D.Pa.1983); *In re Sobin,* 99 B.R. 483, 484 (Bankr.M.D.Fla.1989); *Matter of Kleber,* 81 B.R. 726, 727 (Bankr.N.D.Ga. 1987); *In re Easley,* 72 B.R. 948, 951 (Bankr. M.D.Tenn.1987); *In re Caldwell,* 67 B.R. 296, 300–01 (Bankr.E.D.Tenn.1986); *Street v. Lawson (In re Street),* 55 B.R. 763, 765 (9th Cir.BAP 1985); *Matter of Jennings,* 31 B.R. 378, 380 (Bankr.S.D.Ohio 1983).

The legislative history states:

Subsection (a) of this section gives the debtor one absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already once been converted from chapter 11 or 13 to chapter 7, then the debtor does not have that right. The policy of the provision is that the debtor should always be given the opportunity to repay his debts.

S.Rep. No. 989, 95th Cong.2d Sess. 380, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5880; H.R.Rep. No. 595, 95th Cong.2d Sess. 94, *reprinted in,* 1978 U.S.C.C.A.N. 5963, 6336.

■ The legislative history reveals that the "absolute" right to convert hinges on debtors' opportunity to repay their debts. In order to have debts to repay, debts must exist. If a discharge order is entered, and the automatic stay vacated as to secured creditors, a logical assumption is that debts no longer exist for the debtor to repay.[6] Thus, it is possible no claim would be filed in a converted Chapter 13.[7]

Several courts have not found an "absolute" mandate in the language of Section 706(a), especially following entry of the order of discharge. *See, e.g., Starkey,* 179 B.R. at 691 (neither the text, the legislative history, nor the case law regarding Section 706(a) grants a debtor a "truly 'absolute' right to convert");[8] *In re Schwartz,* 178 B.R. 340 (Bankr.E.D.N.Y.1995); *In re Jeffrey,* 176 B.R. 4, 5 (Bankr.D.Mass.1994) (deny conversion to protect against abuse of process); *Spencer,* 137 B.R. at 513–14 (appropriate to deny conversion in light of extreme circumstances amounting to bad faith, imposition on court's jurisdiction, abuse of process or other gross inequity); *In re Safley,* 132 B.R. 397, 399–400 (Bankr.E.D.Ark.1991) (deny conversion if objectively futile to meet eligibility for Chapter 13); *In re Jones,* 111 B.R. 674, 680 (Bankr.E.D.Tenn.1990) (limit one time conversion right to circumstances where debtor did not receive discharge or the discharge has been revoked); *In re Calder,* 93 B.R. 739, 740 (Bankr.D.Utah 1988) (denied conversion where debtor, who was an attorney, abused the system).

Moreover, a careful reading of *Martin* suggests that the debtor's right to convert is only absolute "in the absence of extreme

---

**6.** The sole expressed policy of Section 706(a) in the legislative history is to give the debtor an opportunity to repay his debts. Consider how feebly, if at all, that policy would be accomplished in this case.

    In *In re Spencer,* 137 B.R. 506 (Bankr. N.D.Okla.1992), the court noted that the absolute nature of Section 706(a) ends "[w]here a conversion to Ch. 13 amounts to an attempt to escape debts rather than repay them." *Spencer,* 137 B.R. at 512.

**7.** The Debtors did, however, reaffirm with Sears. The reaffirmation agreement *is on file.*

**8.** The *Starkey* case provides a comprehensive and practical discussion regarding the interpretation of the language of Section 706(a), particularly the phrase "at any time." *Starkey,* 179 B.R. at

691–93. The court rejects the idea that "at any time" creates an absolute right. Rather, the court states that "[t]he words 'at any time' refer literally to any stage in the progress of a case, not to any conditions which may develop during that progress, especially in an abnormal and abusive case." *Starkey,* 179 B.R. at 692.

    Particularly intriguing is the *Starkey* court's comments regarding the phrase "at any time" in Section 706(b):

The words "at any time" in § 706(b) surely cannot mean that the Bankruptcy Court can force a debtor into Ch. 11 whenever the Judge feels like it, "regardless of circumstances." If the Judge cannot force the debtor into Ch. 11 whenever he feels like it under § 706(b), then the debtor cannot force himself into Ch. 11, 12 or 13 whenever he feels like it under § 706(a).

circumstances." *Martin,* 880 F.2d at 859; *see also In re Finney,* 992 F.2d 43, 45 (4th Cir.1993).[9]

\*   \*   \*   \*   \*   \*

■ The Seventh circuit has not considered the issue. This Court is not bound by a decision of a court of appeals for another circuit. *See e.g., Matter of Hoskins,* 102 F.3d 311, 313 (7th Cir.1996); *In re Tardiff,* 146 B.R. 499, 499–500 (D.Me.1992).

■ The Court will follow the holding in *Jeffrey,* yet go a step farther and impose a bright-line rule that would prohibit conversions from Chapter 7 to Chapter 13 if the request is made post-discharge.[10]

In *Jeffrey,* the court concluded that after a discharge has been granted, a conversion from Chapter 7 would constitute an abuse of the bankruptcy process:[11]

> A Chapter 7 case involves a *quid pro quo:* debtors receive a discharge and, in exchange, make full disclosure about their financial affairs, especially their assets, and surrender their nonexempt assets to the trustee for liquidation and distribution among creditors.

*Jeffrey,* 176 B.R. at 6.

Thus, as the *Jeffrey* court concludes, there is no reason to convert to a Chapter 13 after receiving a discharge in Chapter 7 because the debts have been discharged, and therefore there are no longer debts to repay. *Jeffrey,* 176 B.R. at 6.

The Debtors say they could move for relief from judgment under FRCP 60, so as to vacate their discharge order before converting to a Chapter 13. *See e.g., In re Tardiff,* 137 B.R. 83, 85–89 (Bankr.D.Me.1992), *vacated,* 146 B.R. 499 (D.Me.1992). (Debtor attempted to seek relief from his discharge under FRCP 60(b) and FRBP 9024). To date, a pleading that would accomplish this has not been filed.

■ As in *Jeffrey,* the Court finds that it would be an abuse of process to permit the Debtors to convert to Chapter 13 at this stage of their Chapter 7 case. A review of the Debtors' original and amended schedules reveals that this is not a case where the Debtors inadvertently proposed inaccurate information in one instance. The Debtors' schedules are fraught with discrepancies. They undervalued and overvalued vehicles and indicated no insurance policy values when there was a cash surrender value.[12] Most important, when the Trustee learned of these discrepancies, the Debtors sought to amend their petitions to further suit their own purposes.

The Court also finds that the Debtors' proposal to provide creditors with a greater dividend through a Chapter 13 plan lacks credibility. These debtors are not motivated by a desire to repay their debts, or to provide a greater dividend to creditors. These debtors are motivated by a desire to rid

---

*Starkey,* 179 B.R. at 692.

**9.** The *Finney* court found that the debtor's actions were "insufficiently egregious" to warrant the invocation of Section 105(a) to deny a Section 706(a) motion outright. *Finney,* 992 F.2d at 45. This suggests to the Court that the Fourth Circuit did not want to foreclose the opportunity to deny a debtor's right to convert under sufficient circumstances.

**10.** Or, at the very least, a rule that permits conversion after discharge only in the event of extreme circumstances. No such circumstances exist here.

**11.** The phrase "at any time" succumbs to good old Section 105. Here, an Order denying conversion would prevent an abuse of process. *See e.g., Jeffrey,* 176 B.R. at 6 (citing *In re Calder,* 93 B.R. 739, 740 (Bankr.D.Utah 1988)); *In re Tardiff,* 145 B.R. 357, 360 (Bankr.D.Me.1992).

**12.** Although some items may be of inconsequential value, the Debtors have indicated under question #33 of Schedule B that they own a Sears snow blower and that a reaffirmation agreement has been filed on the snow blower, yet the amended Schedule B no longer lists the snow blower. Another discrepancy is the existence of Motorola stock in the original Schedule B, but it is visibly absent in the amended schedule.

These items were not mentioned by either the Trustee or the Debtors' attorney, yet the Court noticed these discrepancies upon its own review of the Debtors' schedules.

themselves of the Chapter 7 Trustee and place their future in the hands of a Chapter 13 Trustee, who can neither take possession of their property nor file a Section 727(d) complaint to revoke discharge.

The Trustee further argues that the Debtors have no disposable income to fund a Chapter 13 plan, and that the Debtors did not present the Court with a proposed Chapter 13 plan. *Schwartz,* 178 B.R. at 345. The Debtors say they now want to turn to Chapter 13 because they have fallen behind on their mortgage payments, and hope to save their home. But it is hard to imagine how the Debtors can now save their home in a Chapter 13 when an Order modifying the stay was entered in favor of their mortgage holder, and conversion to Chapter 13 will not affect that Order.

Only a fresh case, not a conversion, would give rebirth to an automatic stay. Thus, heading into Chapter 13 from a converted Chapter 7, the Debtors would have no unsecured debts, and a mortgage holder who is not enjoined from foreclosure by the automatic stay. The sole stated legislative purpose of Section 706(a) cannot be fulfilled. It would appear, then, that the Debtors' noble representations regarding a Chapter 13 are an exercise in futility. *Safley,* 132 B.R. at 400.

In short, either these Debtors are dishonest, or they have been inadequately represented by counsel in the preparation of their Voluntary Petition and in their choice of relief under the Bankruptcy Code. The Trustee has argued persuasively that Congress did not intend to provide debtors with an absolute right of conversion in Section 706(a). The circumstances here are precisely the kind which justify denial of conversion.

The Motion of the Debtors, Walter and Wendi Lesniak, to Convert Case to Chapter 13 should be denied.

SEE ORDER.