**In re Demetre MARCAKIS, Debtor.**

**No. 897–80690–478(DTE).**

United States Bankruptcy Court,
E.D. New York.

Oct. 23, 2000.

Lester & Fontanetta, PC, by Roy Lester, Garden City, New York, for debtor.

Zeichner, Ellman & Krause, LLP, by Nathan Schwed, New York City, for Neil Ackerman, Chapter 7 Trustee.

## DECISION: DENYING DEBTOR'S MOTION FOR AN ORDER TO CONVERT CASE FROM CHAPTER 7 TO CHAPTER 13

DOROTHY EISENBERG, Bankruptcy Judge.

### BACKGROUND

This matter comes before the Court as a Motion brought by Debtor Demetre Marcakis ("Debtor") for an Order to Convert the Case from Chapter 7 to Chapter 13 pursuant to 11 U.S.C. § 706(a). The case has not yet been converted under either 11 U.S.C. § 1112 or § 1307. Debtor filed his petition for relief under Chapter 7 on January 31, 1997, and on March 17, 1998 this Court issued an Order discharging Debtor. On October 9, 1998 the Trustee filed an Adversary Complaint against Debtor's wife Evangelia Marcakis ("Evangelia"), Frank Poggiali Alibi Restaurant Corp. ("FPARI") and others seeking injunctive relief and the recovery of (1) Debtor's 100% interest in the stock of "FPARI," and (2) a note and mortgage held on the sale of real property owned by FPARI (Adversary Proceeding No. 98–8596). At a hearing on January 20, 2000 and under the Court's subsequent Findings of Fact, Conclusions of Law, and Order Awarding Summary Judgment, dated March 10, 2000, the Trustee was granted summary judgment to the extent that the Court found *inter alia* (1) that as of the closing date of the sale of property, Debtor was the owner of all shares in FPARI; (2) that all of the issued and outstanding shares of FPARI, the note, the mortgage, and the note payments constituted property of the estate under 11 U.S.C. § 541.

Debtor's Motion for an Order to Convert the Case from Chapter 7 to Chapter 13 was filed by Debtor after the trial wherein the Court found serious irregularities and tampering with tax returns by the Debtor. No proposed plan was filed with the motion. A hearing was held on June 8, 2000 and this Court, ruling from the bench, denied Debtor's Motion for an Order to Convert the Case. The Court now sets forth its findings of fact and conclusions of law in greater detail.

### FACTS

1. Although the Debtor's petition indicated that the Debtor did not own any non-exempt property, the Court has entered an Order indicating that the Debtor, not Evangelina his spouse, owned the property, which is now property of this estate. That Order has not been appealed.

2. On February 27, 1996, Debtor sold the Old Lighthouse Restaurant for $140,-000, which he received. FPARI sold the real property on which the restaurant stood, for $490,000, $30,787.35 of which was paid upon execution, $79,212.64 at closing, and the remaining $322,000 due under a purchase money note and mortgage, executed and delivered on May 2, 1996, the date of the closing. Under that mortgage the remaining principal sum of $322,000 was to be paid in 116 monthly payments of $3,994.97. No interest would be included through November 2, 1996; then 8% interest would be included until the sum was paid off. There has been no default of payment. Therefore, it appears that approximately one-half of the payments from the purchasers remain to be collected over the next 4 years. According to the schedules filed, if all payments are

made, creditors should receive 100% of their claims.

3. Debtor's Chapter 7 Petition and Schedules indicated: (a) that the secured claims against the estate amount to $3,000.18 (Schedule D); (b) that unsecured, priority claims against the estate are listed at $0, but that there is an undetermined amount of debt owed to the federal and state tax authorities (Schedule E); (c) that the unsecured, non-priority claims amounted to $141,598.82 (Schedule F); (d) that the combined monthly income of Debtor and Evangelia is $492 (Schedule I); (e) that Debtor's monthly expenses amount to $1435 (Schedule J).

4. The Debtor received a discharge by Order entered March 17, 1998.

5. Based on the testimony and evidence presented before this Court, the Court found that photocopies of the 1994 and 1995 federal tax returns allegedly filed in behalf of FPARI and introduced into evidence at the hearing by the Debtor were altered in an attempt to persuade the Court that Debtor's spouse owned FPARI. However, photocopies of a second set of the same tax returns obtained by the Trustee from Debtor's accountant, and representing the version of the returns sent to the IRS, confirm that the original name and social security number listed for the individual owner of FPARI stock were that of "D. Marcakis."

## ISSUE

The matter before the Court concerns the question of whether the conversion of Debtor's case from Chapter 7 to Chapter 13 is within his absolute right to do so, in spite of the Debtor having already received a discharge under Chapter 7. If there is not an absolute right to convert at any time, under what circumstances is denial of such a request appropriate?

## DISCUSSION

### I.

A conversion from Chapter 7 to chapter 13 is governed by 11 U.S.C. § 706(a). It states:

(a) the debtor may convert a case under this chapter to a case under chapter 11, 12 or 13, of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

11 U.S.C. § 706(a) (West 2000).

As might be expected, close behind follows the now oft-quoted legislative history:

Subsection (a) of this section gives the debtor the one-time absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already been converted from chapter 11 or 13 to chapter 7, then the debtor does not have that right. The policy of the provision is that the debtor should always be given the opportunity to repay his debts, and a waiver of the right to convert a case is unenforceable.

S.REP. No. 989, 95th Cong., 2d Sess. 380, U.S.Code Cong. & Admin.News 1978, at 5880 (1977) (quoted in United States Code Annotated (West 1993)).

 There is indeed a right by the Debtor to convert under section 706(a); that much is certain. However, the legislative committee's choice of "absolute" in regard to Section 706(a) is infelicitous to say the least and has spawned an interpretation of the statute couched in hyperbolic terms very much at odds with the equitable considerations of eligibility, good faith and appropriateness which are inherent in a court's review of the facts and circumstances in any request brought on by motion. Yet the language remains the key and the courts have addressed themselves to section 706(a) time and time again. In particular, the court in *In re Starkey,* 179 B.R. 687 (Bankr.N.D.Okla.1995) looked extensively into the problems of linguistic consistency and context in order to sort out the intentions of the legislators.

The idea of an "absolute right" to convert is derived from the first sentence's

words "at any time," which are supposed to mean, in effect, "regardless of circumstances."

This supposition is erroneous, for two reasons. First, the words "at any time" are not the words "regardless of circumstances." The words "at any time" refer literally to any stage in the progress of a case, not to any conditions which may develop during that progress, especially in an abnormal and abusive case. Second, statutory language must be read in context. Immediately after § 706(a) comes § 706(b), which reads as follows:

On request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time,

\* \* \*

Here, it is clear that the committee report's words "absolute right" and "always" were never meant to be taken literally. Having stated that the debtor's "right" is "absolute," the committee report's very next sentence acknowledges (as the language of the statute also clearly provides) that the "right" is not "absolute" and that "always" means usually—for "[i]f the case has already once been converted from chapter 11 or 13 to chapter 7, then the debtor does not have that right," (citation omitted). At this point, the committee report specifically acknowledges only those circumstances which are also specified in § 706(a), i.e., "if the case has already once been converted..." But these are not the only restrictions on conversion. The statute itself, in subsection (d), goes on to provide that the debtor's "absolute right" is further restricted by 11 U.S.C. § 109's requirements of eligibility for a Chapter. This additional condition is acknowledged a few paragraphs later in the committee report on § 706(d). Most interesting are the committee's comments on § 706(b). The committee report says that

Subsection (b) permits the court ... to convert the case to chapter 11 at any time. The decision whether to convert is left in the sound discretion of the court, based on what will most inure to the benefit of all parties in interest, (citation omitted).

That is, according to the committee report, the words "at any time" do not preclude exercise of "the sound discretion of the court, based on what will most inure to the benefit of all parties in interest." If this is true of § 706(b), it should be true of § 706(a). The legislative history of § 706, read as a whole, indicates that debtor certainly does not have any "absolute right" to convert regardless of circumstances.

If the statutory language of § 706(a), (b) were taken alone, both subsections stating the conversion may occur "at any time," it would indicate that conversion under § 706(a) and (b) should be determined by closely similar standards. The legislative history indicates that Congress actually intended conversion at debtor's option under § 706(a) to be granted more readily than at creditors' request under § 706(b); but indicates also that Congress never meant the term "at any time" to prevent the Court from exercising some discretion, taking into account the interests of all concerned in order to guard against abuse. *In re Starkey*, 179 B.R. 687, 692–93 (Bankr.N.D.Okla.1995).

In the case now before the Court, the relevant statutory language has remained an important starting point for determining the scope of 706(a). Debtor's counsel relies much on a Second Circuit Court of Appeals decision, *In re Barbieri*, 199 F.3d 616 (2d Cir.1999), for his assertion that Debtor's right to convert is absolute. *See* Debtor's Counsel's Affirmation in Reply, ¶ 20; June Tr. at 28. At issue in *Barbieri* was whether 11 U.S.C. § 1307(b) provides the debtor with an absolute right to dismiss a voluntary petition in Chapter 13 bankruptcy. The Court of Appeals be-

lieved it does and reversed the Order of the District Court which had in turn affirmed the Bankruptcy Court's denial of the debtor's motion to dismiss and *sua sponte* conversion of the Chapter 13 case to Chapter 7. *In re Barbieri*, 199 F.3d at 617. The debtor had contracted to sell a building, then filed in Chapter 13, proposing a plan which would repudiate the contract and leave the purchaser with an unsecured claim for damages against the bankruptcy estate. The debtor then sought an Order to permit the sale to another purchaser. At the hearing the Bankruptcy Court indicated its intention to convert the case to Chapter 7. The debtor's counsel then and there at the hearing moved to dismiss the chapter 13 petition voluntarily, but the court denied this under § 105 of the Code, deeming conversion to Chapter 7 more appropriate to allow the trustee investigate the debtor's asset. On appeal, the District Court agreed with the Court. Yet, the Second Circuit in its interpretation of Section 1307(b) of the Bankruptcy Code found the Debtor to have an absolute right to dismiss his Chapter 7 case. In the instant case Debtor's counsel insists that, by implication one supposes, the Second Circuit Court's conclusion that the debtor's right to dismiss her petition is "absolute" is applicable to the right to convert as well. Debtor's counsel would appear to anchor his position in the following statement by the court:

> In addition, the District Court's reliance on 11 U.S.C. § 105(a) is misplaced. "[T]he equitable powers emanating from § 105(a) . . . are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules" (citation omitted). In short, although § 105(a) grants a Bankruptcy Court broad powers, it does not authorize the Court to disregard the plain language of § 1307(b).
>
> We are mindful that "the purpose of the bankruptcy code is to afford the honest but unfortunate debtor a fresh start, not to shield those who abuse the bankruptcy process in order to avoid paying their debts" (citation omitted). Nevertheless, our concerns about abuse of the bankruptcy system do not license us to redraft the statute (citation omitted).

*In re Barbieri*, 199 F.3d at 620–21.

Yet of greater interest to this Court is the Court of Appeals' examination of the statutory language of section 1307(b).

> Section 1307(b) unambiguously requires that if a debtor "at any time" moves to dismiss a case that has not previously been converted, the court "shall," dismiss the case. As the Supreme Court has reminded us "shall", generally is mandatory and leaves no room for the exercise of discretion by the trial court. See *Anderson v. Yungkau*, 329 U.S. 482, 485, 67 S.Ct. 428, 91 L.Ed. 436 (1947) (analyzing the language of Fed.R.Civ.P. 25(a), and noting that "[t]he word 'shall' is ordinarily the language of command" (internal quotation marks omitted)); see also *Sievers v. Green (In re Green)*, 64 B.R. 530, 531 (9th Cir. BAP 1986) (discussing § 1307(b), and noting that "[t]he word 'shall' is a word of command which allows the trial court no discretion"). The only limitation of the right to dismiss is stated in § 1307(b) itself, which provides for dismissal "if the case has not been converted under section 706, 1112, or 1208 of this title" (emphasis supplied) (sic).
>
> The mandatory nature of § 1307(b) becomes even clearer when the language of that provision is compared with the permissive language of § 1307(c) (citation omitted). As the Supreme Court has observed, "[i]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (internal quotation marks omitted). "[w]hen the

same [provision] uses both 'may' and 'shall,' the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory." *Anderson,* 329 U.S. at 485, 67 S.Ct. 428, 91 L.Ed. 436.

*In re Barbieri,* 199 F.3d at 619–20.

Debtor's counsel seems not to have realized that the very analysis of statutory language employed by the Court of Appeals, from which he seeks support, provides the material for a countervailing argument in the matter now before the Court. In looking to the actual verbs used in the statute, the Court agrees that, simply put, "shall" means "must," something mandatory, and "may" connotes the permissive, the possible; and when turning to section 706, reading all subsections as a context, as did the *Starkey* court, *supra,* and indeed as did the *Barbieri* court with section 1307, subsections (b) and (c) of section 706 speak of what a court "may" do concerning conversion. The court in *In re Hauswirth* also made passing note of this.

The ... court [in *Martin v. Martin,* 880 F.2d 857 (5th Cir.1989) ] appears to be the only court to conclude that a debtor has an unqualified, absolute right to convert. That court based its conclusion upon the words in § 706(a). "The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time." (Emphasis supplied.) Congress demonstrated its ability to accord debtors a virtually absolute right in § 1307(b), which provides, "On request of the debtor at any time, ... the court shall dismiss a case under this chapter." *The difference in the language in these two code sections supports a conclusion that they should be interpreted differently* (emphasis added).

*In re Hauswirth,* 242 B.R. 95, 96 n. 2 (Bankr.N.D.Ga.1999).

■ The very first words of section 706(a)—"The debtor may convert a case ..."—is in the nature of the permissive. In addition, why must a debtor seek con-

version by motion if not to attempt by persuasion to move a court to so permit? *Cf. In re Spencer,* 137 B.R. 506, 511 (Bankr.N.D.Okla.1992) ("for, if conversion under § 706(a) must be allowed no matter what the circumstances, then no purpose would be served by motion and order; ..."). Since a motion must be made and approved by the Court, then a court must consider in its decision to permit or deny the possibility of abuse; prejudice to other parties or creditors; the eligibility to be a Debtor under the converted section of the code; and all the circumstances generally. The statutory language clearly states that the Debtor may convert his case, but does not state that he or the Court "shall" honor his request.

■ The Court must determine if the conversion is appropriate pursuant to the overall purpose and policy of the Bankruptcy Code.

### The effect of a discharge on Debtor's request to convert to Chapter 13 pursuant to § 706(a).

■ When a case is converted to another chapter, the date of the filing of the petition remains the commencement date for the case. The intent of Congress to facilitate and encourage debtors to repay their debts in contrast to a Chapter 7 liquidation is defeated and unavailable to a debtor who has been discharged of all discharged debts he had as of the date of the filing of the petition. To permit a discharged debtor to convert his Chapter 7 case to a Chapter 13 case is ludicrous as Debtor no longer has any meaningful debts to repay pursuant to a Chapter 13 plan. His discharged creditors no longer have any right to either receive payment or object to confirmation of any plan proposed by the debtor. *In re Lesniak,* 208 B.R. 902 (Bkrtcy.N.D.Ill.1997), is instructive in its application of Section 706(a) to facts not dissimilar to those now before the Court. The *Lesniak* Court saw the issue simply whether Section 706(a) provides an

absolute right to convert from Chapter 7 to 13. Quoting both the statute and the legislative history, the Court observed that the latter had revealed that

> the "absolute" right to convert hinges on debtors' opportunity to repay their debts. In order to have debts to repay, debts must exist. If a discharge order is entered, and the automatic stay vacated as to secured creditors, a logical assumption is that debts no longer exist for the debtor to repay (footnote omitted). Thus, it is possible that no claim would be filed in a converted Chapter 13. (footnote omitted).

*In re Lesniak,* 208 B.R. at 905. In this case, the Debtor listed secured debt as only $3,000. Presumably, that creditor is not a threat to the Debtor's lifestyle, and the Debtor is not obligated to repay a long term mortgage debt.

■ The *Lesniak* court viewed permitting the Debtor's to convert to Chapter 13 at this stage in their Chapter 7 case with a discharge in place an abuse of process. It appears that once the Chapter 7 discharge has been granted, the Debtor's personal liability is extinguished thus rendering the conversion meaningless, except as to those creditors holding non-dischargeable claims. *In re Safley,* 132 B.R. 397, 399, 400 (Bankr.E.D.Ark.1991). *See also, In re Jones,* 111 B.R. 674, 680 (Bankr.E.D.Tenn. 1990).

As in *Lesniak,* the facts before the Court indicate certain abuses of the bankruptcy process. Although the Debtor received his discharge in Chapter 7, the adversary proceeding revealed that he was the owner of stock which was not indicated in his schedules. As stated in *In re Jeffrey,* 176 B.R. 4, 6 (Bankr.D.Mass. 1994): "Where the debtors have already received a discharge, it is clear that their purpose in converting to Chapter 13 is *not* to repay their debts. Rather their purpose is to evade their obligations under Chapter 7." (Emphasis in original). *See, also, In re Spencer,* 137 B.R. 506, 512 (Bankr.N.D.Okla.1992) ("In the presence

of extreme circumstances, debtor's right to convert can be conditioned or denied if necessary to prevent injustice to other parties . . . .").

As in our case, the *Lesniak* court found that the Debtor's proposal to formerly file a Chapter 13 plan which would provide payments to creditors is without credibility. The Debtor's schedules indicated that the Debtor's monthly income was approximately one-third of what was required for monthly living expenses for himself and his spouse. Even assuming he could receive the monthly payments from the notes which are now being held by the Trustee, the Debtor has approximately one and one-half years left in order to conclude a plan as of the date of the filing of the petition. That would not enable him to repay the creditors in full, as they would be entitled to other than in a Chapter 13. Such a plan, if it were filed, would not be confirmable.

To permit the Debtor to convert to a Chapter 13 at this time is a futile act since it would not result in any confirmable 100% plan to creditors and would remove all of the assets of this estate to Debtor. The Debtor is motivated by a desire to rid himself of the Chapter 7 Trustee and place his future in the hands of a Chapter 13 Trustee, who can neither take possession of Debtor's property nor file a Section 727(d) complaint to revoke the discharge. *See, e.g. In re Lesniak,* 208 B.R. 902 (Bankr.N.D.Ill.1997).

### CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter and the parties under 28 U.S.C. § 157(a) and § 1334, and Bankruptcy Rule 6009.

2. Venue is proper pursuant to 28 U.S.C. § 1409(a).

3. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

4. The language of section 706(a) of the Bankruptcy Code indicates that the right

to convert a Chapter 7 case to Chapter 13 is not absolute, but that discretion remains with the Court to judge the propriety of such a conversion.

5. The circumstances surrounding this case reveal that the Debtor had attempted to conceal an asset belonging to the estate. This is only one of the factors to be considered by the Court in making a determination regarding conversion of the case. The Court must also consider whether the Debtor is qualified to be a Chapter 13 debtor, as well as whether conversion to a Chapter 13 case would be a futile act which would not result in a confirmed plan pursuant to section 1325 of the Bankruptcy Code.

6. Where a debtor has received a discharge in Chapter 7, there are no dischargeable debts remaining to be addressed in a Chapter 13 plan.

7. Debtor has neither formulated nor proposed a Chapter 13 plan. Even if Debtor were permitted to and did propose a 100% plan utilizing the assets of the estate obtained by the Trustee, the creditors would not receive what they would be entitled to receive within the time remaining for a Chapter 13 plan. Therefore, the Debtor's plan would not be confirmed.

8. To convert this case to a Chapter 13 at this time would be a futile act, and not in the best interest of creditors and in furtherance of the public policy underlying Chapter 13.

9. The Motion to Convert from Chapter 7 to Chapter 13 is denied. An Order will be entered in accordance with this decision.