**In re Sue M. OBLINGER, Debtor.**

No. 02–32028.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Jan. 6, 2003.

Michele G. Cerni, Toledo, OH, for Debtor.

Louis J. Yoppolo, Anthony B. DiSalle, Toledo, OH, trustees.

### MEMORANDUM OF DECISION ON MOTION FOR CONVERSION

MARY ANN WHIPPLE, Bankruptcy Judge.

This case is before the court upon Debtor Sue M. Oblinger's Notice and Motion for Conversion from Chapter 7 to Chapter 13 ("Motion") [Doc. # 13] and Chapter 7 Trustee Louis J. Yoppolo's ("Trustee") Objection to Conversion [Doc. # 18]. The court has jurisdiction over Ms. Oblinger's pending Chapter 7 case under 28 U.S.C. § 1334(a) and General Order 84 of the United States District Court for the Northern District of Ohio, which is the general order of reference to the bankruptcy courts in this district under 28 U.S.C. § 157(a). This is a core proceeding that this bankruptcy judge may hear and determine under 28 U.S.C. § 157(b)(2)(A) and (O).

**Factual and Procedural Background:**

Debtor filed her voluntary petition for relief [Doc. # 1] under Chapter 7 of the Bankruptcy Code on April 2, 2002. She scheduled her home at a current market value of $45,000.00, encumbered by a mortgage held by Key Bank securing a debt scheduled as $19,284.00. [Doc. # 1, Schedules A & D]. Debtor claimed $5,400.00 in exemptions on the home under Ohio Rev. Code § 2329.66(A)(1) & (18). [Doc. # 1, Schedule C]. On May 28, 2002, Debtor filed an executed Reaffirmation of Debt [Doc. # 3; Doc. # 1, Schedule D] agreement with Household Realty Corporation in the amount of $4,097.75, with that debt also secured by her home. Based on Debtor's schedules and the reaffirmation agreement, she has equity in her home of approximately $16,219.00 beyond the exemption amount she has claimed.

Debtor scheduled other debts of $7,186.92.36 and $3,489.72 secured by property other than her home. Her scheduled unsecured debts were one unsecured priority debt of $900.82 and general unsecured, nonpriority debts totaling $21,241.93. [Doc. # 1, Schedules E and F]. The Chapter 7 claims bar date has

passed, however, and only three unsecured claims totaling $9,496.58 have been filed. [Doc. ## 6, 7].

Debtor's original budget, comprised of her Schedules I and J, showed that her total monthly expenses of $1384.00 exceeded her total monthly income of $1,138.00 by $246.00.[1] On their face, these documents evidenced that she had no disposable income with which to fund a Chapter 13 plan. [Doc. # 1, Schedules I and J].

On May 29, 2002, the Trustee conducted the first meeting of creditors under 11 U.S.C. § 341. Thereafter, the Trustee applied for authority to employ a real estate broker [Doc. # 5] to sell Debtor's home. Debtor objected. [Doc. # 8]. After a hearing on the Trustee's application, the court overruled the objection and authorized the appointment of a real estate broker. [Doc. # 16]. On August 5, 2002, the Order of Debtor's Discharge [Doc. # 9] was entered. Then, on August 21, 2002, the Debtor filed the pending Motion to convert her case to Chapter 13, to which the Trustee has objected. She has not yet filed a proposed Chapter 13 plan.

**Issues:**

The Motion raises three issues. The first issue is whether Debtor's Chapter 7 discharge precludes the court from converting this case to Chapter 13. The second issue is whether other circumstances preclude the court from converting this case from Chapter 7 to Chapter 13. The third issue is whether Debtor's Chapter 7 discharge must or should be vacated as a condition of conversion.

**Law and Analysis:**

Section 706(a) of the Bankruptcy Code governs conversion of a Chapter 7 case to a case under another chapter of the Bank-

ruptcy Code. 11 U.S.C. § 706(a). Generally, § 706(a) allows a debtor to convert a case under Chapter 7 to a case under Chapter 13 at any time if the case has not previously been converted, as follows:

> The debtor *may* convert a case under this chapter to a case under chapter 11, 12, or 13 of this title *at any time,* if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of this right to convert a case under this subsection is unenforceable. (Emphasis added).

Section 706(d) is also relevant to understanding the circumstances under which conversion is permissible:

> Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

■ The Federal Rules of Bankruptcy Procedure specify the method for debtor exercise of the right granted by § 706(a). Under Fed. R. Bankr.P. 1017(f), the debtor cannot unilaterally effect conversion by notice, without a court order. *Cf.* Fed. R. Bankr.P. 1017(f)(3)(conversion of a previously unconverted Chapter 13 case to another chapter is accomplished by debtor's notice of conversion, without court order). Rather, a motion must be filed and a court order entered. Fed. R. Bankr.P. 1017(f)(2). Although a motion must be filed, it is not treated as a contested matter under Fed. R. Bankr.P. 9014. Fed. R. Bankr.P. 1017(f)(1). Ms. Oblinger has styled her filing as a "Notice and Motion." As she cannot unilaterally convert her case to Chapter 13, the court is treating her request as a motion under Fed. R. Bankr.P. 1017(f)(2) and 9013.

---

1. Debtor's Schedule I shows certain deductions from her income that either will not occur in the future as a result of the bankruptcy (wage garnishments) or would not be appropriate in Chapter 13 (401(k) plan contribution deductions).

■ The court must use basic principles of statutory interpretation, the purpose of which is to discern what Congress intended, in applying § 706(a) and (d) to Ms. Oblinger's request to convert her case to Chapter 13. The starting point for interpreting the Bankruptcy Code, as with any federal statute, is the words of the statute itself and their plain meaning. *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). If the statutory language is clear enough to discern congressional intent, the court's analysis ends there and the court must enforce the statute according to its terms, without looking beyond the language of the statute such as to legislative history or pre-Code practice. *Vergos v. Gregg's Enters., Inc.*, 159 F.3d 989, 990 (6th Cir.1998). As the Supreme Court holds, "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Ron Pair Enters., Inc.*, 489 U.S. at 242, 109 S.Ct. 1026 (citation omitted).

■ The language of § 706(a) is broad and permissive, allowing conversion by a debtor "at any time." There is no time limitation to pre- or post-discharge in the language Congress chose, and its use of the words "at any time" shows that Congress did *not* intend that there be a time limitation on the right to convert. Nevertheless, there is a split in authority about what, if any, circumstances a bankruptcy court can appropriately consider in deciding a debtor's request to convert a case under § 706(a). The Sixth Circuit has not addressed the issue.

Some cases interpreting § 706(a) characterize the debtor's right to convert as "absolute." *Compare In re Widdicombe*, 269 B.R. 803, 806–07 (Bankr.W.D.Ark. 2001) (characterizing the position that the

right to convert is absolute as the majority view) *with In re Ponzini*, 277 B.R. 399, 403 n. 3 (Bankr.E.D.Ark.2002) (asserting that it is no longer clear what line of authority represents the majority view). For example, the Fifth Circuit held that "a debtor's right to convert under section 706(a) is, as indicated by the statute and its legislative history, an absolute one." *Martin v. Martin (In re Martin)*, 880 F.2d 857, 859 (5th Cir.1989); *see also In re Jennings*, 31 B.R. 378, 380 (Bankr.S.D.Ohio 1983); *In re Caldwell*, 67 B.R. 296, 300 (Bankr. E.D.Tenn.1986).

But even the *Martin* court recognized in dicta that other courts have denied motions to convert where the request arises under "extreme circumstances." *Id.* (citing *In re Calder*, 93 B.R. 739 (Bankr. D.Utah 1988)(bankruptcy court denied conversion, pursuant to 11 U.S.C. § 105, to prevent debtor's abuse of process)). *See* Bruce H. White, *Is a Debtor's Right to Convert Under § 706(a) Really Absolute?* 17 Am. Bankr.Inst. L.J. 28 (Feb.1998). These courts generally hold that conversion is within the bankruptcy court's discretion, *see, e.g., In re Krishnaya*, 263 B.R. 63 (Bankr.S.D.N.Y.2001), and deny conversion under § 706(a) if the circumstances indicate bad faith, abuse of the bankruptcy process or other gross inequities by a debtor in seeking to convert from Chapter 7 to Chapter 13. *Ponzini*, 277 B.R. at 405–06; *In re Thornton*, 203 B.R. 648, 651–53 (Bankr.S.D.Ohio 1996).

And a number of courts have specifically held that a Chapter 7 discharge precludes exercise of the debtor's right to convert under § 706(a). The Trustee relies upon *In re Lesniak*, 208 B.R. 902, 906 (Bankr. N.D.Ill.1997), for this proposition. In *Lesniak*, the court denied debtors' motion to convert their case from Chapter 7 to Chapter 13 because the Chapter 7 discharge

order had already been entered; thus, the court reasoned, debtors no longer had any debts to repay under Chapter 13. The *Lesniak* court also cited several examples of debtors' failure to provide complete or accurate information, which amounted to an abuse of bankruptcy process in its view. *Id.* Other courts have similarly held that a Chapter 7 discharge precludes conversion to Chapter 13 under § 706(a), although sometimes using different reasoning than the *Lesniak* court.

Several courts have already comprehensively discussed the various cases holding that a Chapter 7 discharge precludes a first-time conversion to Chapter 13, and dissected and largely rejected their reasoning. *E.g., In re Mosby,* 244 B.R. 79 (Bankr.E.D.Va.2000); *In re Carter,* 285 B.R. 61, 66–69 (Bankr.N.D.Ga.2002). This court cannot add to the scholarship of these cases, and will not reiterate their holdings and analyses here. Suffice to say that this court generally agrees with the *Mosby* and *Carter* courts. Whether a debtor's right to convert a case under § 706(a) is appropriately characterized as absolute or not, the court does not find that, as a matter of law, a Chapter 7 discharge precludes a debtor such as Ms. Oblinger from converting her Chapter 7 case to Chapter 13. *Mason v. Young (In re Young),* 237 F.3d 1168, 1173–74 (10th Cir.2001)(permitting a debtor to convert a case after he had obtained a Chapter 7 discharge).

To hold otherwise would conflict with the plain language of § 706(a) and (d). The existence of a discharge is part of the natural process of the routine Chapter 7 case. The argument that a Chapter 7 discharge precludes conversion under § 706(a) is essentially one that it is now too late to convert because of the discharge. But by using the words "at any time" in § 706(a), Congress at a minimum disavowed a time component in determin-

ing a motion to convert a case from Chapter 7 to Chapter 13. *Cf. Carter,* 285 B.R. at 68 (more than one year had elapsed since discharge by the time debtor requested conversion to Chapter 13). The language of § 706(a) is unambiguous and the plain meaning is that the debtor has an automatic right to convert in this situation. *See In re Gibbons,* 280 B.R. 833, 835 (Bankr.N.D.Ohio 2002). The court finds that it lacks discretion to block a conversion based on the debtor's Chapter 7 discharge, where the case is still open, it has not previously been converted and the debtor is eligible for relief under the chapter chosen. *Id.* (citing Lawrence P. King, 6 Collier on Bankruptcy P 706.01 at 706–3 (15th ed. rev.1999)). And as the legislative history generally support this position, the plain meaning of the statute cannot be said to be demonstrably at odds with the intentions of the drafters. *Krishnaya,* 263 B.R. at 65 (citing H. Rep. No. 95–595, 95th Cong., 1st Sess., 380 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5963, 6336; S.Rep. No. 95–989, 95th Cong., 2nd Sess., 94 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5880).

■ Although this court otherwise tends to agree with those cases holding that conversion might nevertheless be denied under "extreme circumstances," such as a debtor's abuse of process, *In re Jeffrey,* 176 B.R. 4, 6 (Bankr.D.Mass.1994); *but see Widdicombe,* 269 B.R. at 807 (rejecting what court calls minority view that "extreme circumstances" may appropriately be considered in converting a case on the debtor's request under § 706(a)), the court is not called upon to decide that question here in any event. In canvassing those cases, it is apparent that this case lacks the kinds of aggravated circumstances that tend to result in a refusal to convert on grounds other than debtor eligibility for relief under the chosen chapter

of the Bankruptcy Code or a prior conversion. Indeed, the facts of this case appear common: Debtor's sudden epiphany and desire to repay her creditors, prompted by the discovery of substantial equity in Debtor's property and the Chapter 7 Trustee's resulting push to liquidate that equity for the benefit of creditors, as he unquestionably must do if he is doing his job. *See, e.g., Carter,* 285 B.R. at 62 (debtor's "notice" of conversion filed in response to Chapter 7 trustee's motion to sell debtor's real property).

That said, however, the court is still troubled by some of the circumstances in this case, not the least of which is the fact that Ms. Oblinger's desire to repay her creditors did not in fact arise until after the Trustee started doing his job.[2] She now wants to get the Trustee off her back and away from her property. As other courts have observed, the essential quid pro quo of Chapter 7, which Debtor should have expected, is liquidation of non-exempt assets in favor of a comparatively immediate discharge and fresh start. *Jeffrey,* 176 B.R. at 6. But through provisions such as § 706(a) and the more expansive discharge available in Chapter 13 compared to Chapter 7, Congress has demonstrated its strong preference for and encouragement of reorganization and voluntary repayment of creditors, whenever and however the debtor arrives at that threshold during an open bankruptcy case. In Congress' view, a debtor's desire to repay creditors is one arrived at better late than never. *See Finney v. Smith (In re Finney),* 992 F.2d 43, 44 (4th Cir.1993)(conversion to Chapter 11 permitted even after Chapter 7 discharge denied, because "Congress intended...that 'the debtor should always be given the opportunity to repay his debts.' ").

More troubling to the court is that Debtor's original schedules I and J showed no disposable income with which to fund a Chapter 13 plan. And although Debtor has not actually amended her schedules, as she will have to, she did file a document called Supplemental Information for Conversion from Chapter 7 to Chapter 13 [Doc. # 21]. Ms. Oblinger now reports that she has disposable income and appears readily able to fund a Chapter 13 plan. Her supplemental information states that she is now earning gross pay of $2,306.00 per month, with an average after withholding of $1,540.00 per month, while she has reduced her monthly expenses to $813.00. This material change in her reported disposable income, seemingly befitting the circumstances now at hand, raises nagging concerns about the accuracy and completeness of Ms. Oblinger's original schedules.

The court finds, however, that these concerns do not approach abuse of process or other "extreme circumstances." Rather, they are issues of good faith, best interests of creditors, best efforts of Debtor and feasibility relevant to whether any Chapter 13 plan Ms. Oblinger actually proposes should be confirmed. Given the language of § 706 and the procedural context of conversion requests under Fed. R. Bankr.P. 1017(f)(2), as motions but not contested matters, this court joins with those courts that generally hold that these types of issues should be addressed in the context of a complete record developed in a confirmation hearing on a proposed Chapter 13 plan actually noticed to and

---

2. Where a Chapter 7 trustee argued in her objection to conversion that her attorney's fees, costs and expenses should be allowed as an administrative expense in the ensuing Chapter 13 case, the court held that the trustee would be entitled to file a claim in the Chapter 13 case, and that it should be considered in that context. *Widdicombe,* 269 B.R. at 808.

evaluated by creditors and the Chapter 13 trustee, not in the context of a hearing on the propriety of conversion in the first instance. *See, Gibbons,* 280 B.R. at 836. *But cf. Society Nat'l Bank v. Barrett (In re Barrett),* 964 F.2d 588, 589–90 (6th Cir.1992)(making § 1325(a)(3) good faith determination at petition filing and not at plan confirmation stage of case). Such issues are inherent in the Chapter 13 plan confirmation inquiry.

The integrity of the bankruptcy process and the interests of creditors, both of which are implicated by the court's concerns, will also be protected by the procedure that must be followed if a Chapter 13 plan is not confirmed. Parties in interest have the right to seek re-conversion of the case to Chapter 7, whereupon the Trustee will resume his efforts to sell Debtor's home. 11 U.S.C. § 1307(c)(5). Even if a plan is confirmed, other circumstances will also permit creditors to request re-conversion of the case to Chapter 7. *See generally* 11 U.S.C. § 1307(c). And since Debtor will already once have converted her case from Chapter 7, she will be precluded from unilaterally dismissing her case under 11 U.S.C. § 1307(b) without notice and a hearing; she will have to file a motion to dismiss, which the Chapter 13 trustee, creditors and other parties in interest may oppose and argue in favor of re-conversion to Chapter 7. Fed. R. Bankr.P. 1017(a) and (f)(2); *Gibbons,* 280 B.R. at 836; *Carter,* 285 B.R. at 69 (in the event debtor's Chapter 13 plan is not confirmed or consummated after conversion, "the Court will not hesitate to reconvert the Debtor's case to Chapter 7 to allow the Trustee to continue liquidating her assets."). During her Chapter 13 case, the home and its equity will be protected by Debtor's ongoing secured debt payments, by the automatic stay and by her inability to voluntarily encumber it further without court authority.

■ The court's concerns and the Trustee's concerns can appropriately be addressed in the context of the Chapter 13 case. They do not rise to the level of "extreme circumstances" that might otherwise be considered, to the extent appropriate, as a potential bar to conversion in the first instance. Nor does the court find that they are the kind of issues Congress had in mind in § 706(d) in prohibiting conversion "unless the debtor may be a debtor under such chapter" to which conversion is sought. In the court's view, § 706(d) raises only the debtor eligibility criteria of 11 U.S.C. § 109, and in this case the specific criteria for debtor eligibility for Chapter 13 relief set forth in § 109(e). The Trustee has not raised any issues as to Ms. Oblinger's eligibility to be a debtor under Chapter 13 in the context of § 109(e) criteria; the record shows that she has regular income, with debts far less than the limits established in § 109(e). With this being the first attempt to convert the case, and Ms. Oblinger eligible to be a Chapter 13 debtor under § 109(e), the court finds that the Motion must be granted.

■ Finally, in connection with converting this case to Chapter 13, the court has considered whether Debtor's Chapter 7 discharge must or should be vacated as a condition of the relief sought. Neither Ms. Oblinger nor any other party in interest has requested vacation of the discharge order in connection with the requested conversion, so the court would be acting sua sponte in doing so. Having already determined that the discharge order does not itself preclude conversion as a matter of law, and therefore necessitate vacation if conversion is to occur, it is not necessary to vacate the order to grant the Motion. But the idea of a debtor receiving two discharges in the same case seems statutorily awkward, at a minimum. *See Cald-*

*well,* 67 B.R. at 301 (Chapter 7 discharge meaningless in converted case).

Despite the apparent awkwardness of two discharges under different Bankruptcy Code sections in the same case, the court cannot find anything in the letter or logic of the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure to which its unease can be anchored. There is nothing in the Bankruptcy Code that prohibits two discharges in the same case. The court again generally agrees with the analyses of the *Mosby* and *Carter* courts in declining to vacate an existing discharge as either a statutory necessity or a desirable practice in any conversion from Chapter 7 to Chapter 13, *Mosby,* 244 B.R. at 90–92; *Carter,* 285 B.R. at 68–69, and so it will not vacate the Order of Discharge under Chapter 7 already existing in this case.

**Conclusion:**

Based upon the foregoing reasons and authorities, and as effectuated by a separate Order entered in accordance with this Memorandum of Decision, Debtor's motion shall be granted and this case converted to Chapter 13 for further proceedings.