**In re Gaylen N. JOHNSON, Debtor.**

**No. 00–44103M.**

United States Bankruptcy Court,
E.D. Arkansas,
Western Division.

April 18, 2001.

76

Gregory Harris, Little Rock, for Debtor.

## ORDER

JAMES G. MIXON, Chief Judge.

This matter is before the Court upon an objection filed by James F. Dowden ("Trustee") to the motion of Gaylen Johnson ("Debtor") to convert his case from chapter 7 to chapter 13. The issue is whether the Debtor has an absolute right to convert based on 11 U.S.C. § 706(a) (1994). After a hearing on the objection, the Court took the matter under advisement.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (1994), and this Court has jurisdiction to enter a final judgment in the case.

### FACTS

On September 13, 2000, the Debtor filed a voluntary petition for relief under the provisions of chapter 7 of the United States Bankruptcy Code. The Debtor's schedules and statement of financial affairs listed assets totaling $270,550.00 and liabilities of $453,134.00.

On November 1, 2000, the Trustee filed an adversary proceeding against the Debtor's daughter to recover an alleged fraudulent transfer of real property. The Debtor then moved to convert to chapter 13 on November 20, 2000. The Trustee objected to the motion to convert, and a hearing on the objection followed.

At the hearing, the Trustee established that the Debtor's schedules and statement of financial affairs were replete with inaccuracies and misrepresentations.

The Debtor's Schedule B—Question Two asks if the Debtor has any "checking, savings or other financial accounts." To this question, the Debtor answered, "None." (Trustee's Ex. 1.) However, at the hearing the Debtor acknowledged that he has a savings account at a bank in Mau-

melle, Arkansas, where he deposits his monthly income, that he is a signatory on his wife's checking account, and that he is a guarantor on his daughter's bank account.

Also on Schedule B, the Debtor described an IRA account as belonging to his "deceased wife's holdings for daughter" (Trustee's Ex. 1) and valued the asset at zero. Evidence adduced at trial demonstrated that the account was actually titled in the Debtor's name only and is worth $12,000.00 to $13,000.00.

Question One of the Debtor's statement of financial affairs asks what income, from employment or operation of business the Debtor has earned in the last two years. The Debtor answered "0" for 1998 and "0" for 1999. (Trustee's Ex. 1.) In contrast, the Debtor admitted at the hearing that he earned $12,000.00 in 1998 and $12,000.00 in 1999, although he has not filed a federal income tax return since 1997.

The Trustee introduced proof that the Debtor has possession of a 1993, 260–horsepower Baja boat, which the Debtor represented to the tax assessor was his for the tax year 2000. Evidence also showed that Department of Finance and Administration records relating to the boat's license list the Debtor and his wife as the owners.

However, at the hearing the Debtor denied that the boat was his and stated that he had sold it to his 18–year–old daughter around December 1999 or early 2000 for $17,500.00 cash. If indeed this sale took place, the Debtor failed to reveal the transfer as required by Question Ten of the statement of financial affairs.

The Debtor also has possession of a pontoon boat which he asserts belongs to his father-in-law. However, he failed to disclose this fact in response to Question 14 of the statement of financial affairs

asking the Debtor to list all property held for another person.

Further omissions included the fact that the Debtor did not schedule a lawsuit pending against him during the year 2000 by TJA Enterprises. In response to Question Four of the Statement of Financial Affairs, the request for a list of all pending suits within one year preceding the filing of the bankruptcy case, the Debtor answered, "None." (Trustee's Ex. 1.) The Trustee introduced a copy of a consent judgment entered by the Circuit Court of Pulaski County on September 13, 2000, in favor of TJA Enterprises and against the Debtor in the sum of $176,470,58 plus an attorney's fee. (Trustee's Ex. 11.) The consent judgment was entered the same day the Debtor filed for bankruptcy protection.

The Debtor also admitted conveying a house on Lake Hamilton near Hot Springs, Arkansas, to his daughter for zero consideration. Acquired by the Debtor in 1992 for $60,000.00, this real property is the subject of the fraudulent conveyance action being pursued by the Trustee.

In his testimony, the Debtor stated that he agreed to convey the property in 1998, but that the deed was recorded in late 1999 or early 2000. The Debtor retains possession of the property and pays for telephone service, utilities and taxes. The Debtor's daughter was an 18–year–old student when the property was allegedly conveyed in 1998. The Debtor acknowledged in his testimony that the motivation for filing the motion to convert to chapter 13 was to prevent the Trustee from recovering the lake house from the Debtor's daughter.

## LAW

The Bankruptcy Code provides as follows:

The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

11 U.S.C. § 706(a) (1994).

■ Debtors wishing to convert their cases pursuant to section 706(a) must conform to the Bankruptcy Rule providing that "conversion ... shall be on motion filed and served as required by Rule 9013." Federal Rule of Bankruptcy Procedure 1017(f)(2).

Section 706(a) has been construed to mean that an eligible debtor has an absolute right to convert to chapter 13 at any time. 6 Collier on Bankruptcy ¶ 706.02[1] (Lawrence P. King et al. eds., 15th ed. rev.2000). The Collier editors explain the rationale of the statute is that " 'the debtor should always be given an opportunity to repay his debts.' " 6 Collier on Bankruptcy at § 706.02[2] (quoting S.Rep. No. 95–989, 95th Cong.2d Sess. 380). According to the Collier editors, the remedy for an inappropriate conversion is "a motion to reconvert the case for cause after notice to the debtor and a hearing." 6 Collier on Bankruptcy at ¶ 706.02[1].

■ However, this conclusion overlooks a substantial body of case law that has developed since the Code was adopted. These cases hold that the right to convert is absolute only in the absence of extreme circumstances.

See, for example, *Finney v. Smith (In Re Finney)*, 992 F.2d 43, 45 (4th Cir.1993) (finding that extreme circumstances may abrogate a debtor's right to convert but that debtor's misconduct in the case was insufficiently egregious to deny conversion); *In re Martin*, 880 F.2d 857, 859 (5th Cir.1989) (refusing to deny conversion where facts constituting extreme circumstances were not alleged); *Kuntz v. Shambam (In re Kuntz)*, 233 B.R. 580, 585 (1st Cir. BAP 1999) (holding that conversion may be denied for extreme circumstances but that debtor who had failed to timely notify trustee of inheritance would not be precluded from conversion); *In re Sully*, 223, B.R. 582, 585 (Bankr.M.D.Fla.1998) (denying conversion where debtor settled lawsuit that was property of estate and moved to convert when trustee discovered settlement); *Enterprise Nat'l Bank v. Stutzman (In re Wallace)*, 191 B.R. 925, 927 (Bankr.M.D.Fla.1995) (denying conversion motion where debtors committed fraud and showed no likelihood of rehabilitation under chapter 11); *In re Jeffrey*, 176 B.R. 4, 6 (Bankr.D.Mass.1994) (denying debtors' motion to convert for abuse of process when debtors had received chapter 7 discharge without disclosing valuable tort claim).

See, also, *In re Kilker*, 155 B.R. 201, 205 (Bankr.W.D.Ark.1993) (holding that debtor could not convert where sole purpose in filing bankruptcy was to avoid paying a tax debt); *In re Spencer*, 137 B.R. 506, 516 (Bankr.N.D.Okla.1992) (holding extreme circumstances preclude right to convert but allowing conversion, subject to condition that question of fraudulent conveyance and other issues would be pursued in chapter 13 case); *In re Safley*, 132 B.R. 397, 400 (Bankr.E.D.Ark.1991) (denying conversion where debtor was circumventing liquidation of property discovered after discharge entered).

These cases represent the minority view. The majority view is that denying conversion from chapter 7 to 13 is against the clear wording of the statute. Bruce H. White, "Is a Debtor's Right to Convert Under § 706(A) Really Absolute?", 17 Am Bankr.Inst. L.J. 28, 29 (Feb.1998).

For examples of courts following the majority view, see *Street v. Lawson (In re Street)*, 55 B.R. 763, 765 (9th Cir. BAP 1985) (holding court has no discretion to deny debtor's right to convert); *Nelson v. Easley (In re Easley)*, 72 B.R. 948, 952 (Bankr.M.D.Tenn.1987) (stating debtor has an absolute right to convert if debtor is eligible and has not previously converted from another chapter); *In re Kleber*, 81 B.R. 726, 727 (Bankr.N.D.Ga.1987) (holding that court has no discretion to disallow conversion); *In re Caldwell*, 67 B.R. 296, 300–301 (Bankr.E.D.Tenn.1986) (ruling that unequivocal code language gives debtors an absolute right to convert); *In re Jennings*, 31 B.R. 378, 381 (Bankr. S.D.Ohio 1983) (reasoning that no limit on debtor's right to convert may be read into the Code).

■ Considering both views, the Court finds more persuasive the position that the Bankruptcy Court "possess[es] inherent equitable powers to protect the process when the debtor attempts to convert to a reorganization chapter for an improper purpose." *In re Sully*, 223 B.R. 582, 584 (Bankr.M.D.Fla.1998) (citations omitted). Therefore, conversion from chapter 7 to 13 may be denied for lack of good faith as an abuse of process. *In re Sully*, 223 B.R. at 584.

This view is consistent with the judgment of an Eighth Circuit Court of Appeals unpublished opinion affirming a district court decision to deny a debtor's motion to convert from chapter 7 to chapter 13 because of the debtor's bad faith. *See, Martin v. Cox*, 213 B.R. 571 (E.D.Ark.1996), *aff'd per curiam*, 116 F.3d 480 (8th Cir.1997) (unpublished table opinion).[1]

In *Martin*, the district court affirmed the bankruptcy court's finding that the debtor "had falsified documents; failed to list significant assets when filing her petition; omitted pertinent information in the amended schedules; failed to file a federal or state tax return since 1988; made false representations to a Texas bankruptcy court; violated a preliminary injunction issued by the Bankruptcy Court regarding pending litigation in Texas; and falsified a tax return to obtain a loan." *In re Martin*, 213 B.R. at 572.

■ At the hearing in the instant case, the Trustee established by clear and convincing evidence that the Debtor's motion to convert constitutes an unfair manipulation of the Bankruptcy Code and was made in bad faith. Like the debtor in *Martin*, the Debtor in this case has failed to disclose assets, filed grossly inaccurate schedules, failed to file tax returns, misrepresented his interests in various types of property, and given false or misleading answers to questions in his statement of financial affairs and in testimony before this Court.

The schedules and statement of financial affairs filed by a debtor are sworn under the penalties of perjury to be true and correct. False statements or willful omissions from the schedules and statement of financial affairs constitute grounds to deny a debtor's discharge. 11 U.S.C. § 727(a)(4)(A) & (D) (1994).

By his own admission, the Debtor's chief motive in converting to chapter 13 is to avoid the Trustee's pending fraudulent conveyance action, which, if successful, would add a substantial asset to the estate for the payment of creditors. Thus, as in *Martin*, the Debtor's motive in converting

---

**1.** An unpublished opinion is not precedent, but has persuasive value in limited circumstances. 8th Cir. R. 28A(i).

to chapter 13 is to escape debts rather than repay them.

## CONCLUSION

The number and significance of the petition inaccuracies support an inference of bad faith. Moreover, the Trustee has established a prima facie case that the Debtor is concealing assets and fraudulent transfers. The Debtor seeks to shield himself from the consequences of his misdeeds by converting to chapter 13. Under these extreme circumstances, the motion to convert from chapter 7 to chapter 13 will be denied.

IT IS SO ORDERED.