In re James A. PONZINI, Debtor.

No. 4:00–BK–45223 E.

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

April 17, 2002.

Jack W. Dickerson, Dickerson Law Firm, Little Rock, AR, Laura Grimes, Knollmeyer Law Office, Jacksonville, AR, for debtor.

Raymond A. Harrill, Harrill & Sutter, Rita S. Looney, Attorney, Little Rock, AR, for creditor.

M. Randy Rice, Rice & Associates, Little Rock, AR, pro se.

### ORDER DENYING DEBTOR'S MOTION TO CONVERT TO CHAPTER 13

AUDREY EVANS, Bankruptcy Judge.

Debtor's Motion to Convert this case from Chapter 7 to Chapter 13 is before the Court. A hearing was held March 7, 2002. Laura Grimes, Esq. appeared for the debtor who did not appear personally. Raymond Harrill, Esq. appeared for Bennie Beard. The Trustee, M. Randy Rice, was also present. The Court took the matter under advisement.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and the Court has jurisdiction to enter a final judgment in this case. The following constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

The issue before the Court is whether a debtor has an absolute right to convert to Chapter 13 under 11 U.S.C. § 706(a) regardless of the circumstances or the debtor's bad faith in seeking the conversion. The Court holds that § 706(a) does not afford debtors an absolute right to convert to Chapter 13, and in this case, the Debtor's bad faith, abuse of process, and inabili-

ty to fund a Chapter 13 plan preclude the Debtor from converting his Chapter 7 case to Chapter 13.

**FACTS**

The Court's decision is based, in part, on the Debtor's behavior since the date of his filing bankruptcy. Those actions were expressly included in the Court's record by the admittance of the Court's docket in both the Debtor's case-in-chief and the adversary proceeding with no objection, and the parties' stipulation to the facts contained in all documents previously filed with the Court with the exception of any allegations by creditor Bennie Beard ("Beard") not specifically admitted by Debtor. The Court also takes judicial notice of its files, dockets and prior proceedings with respect to the Debtor's case-in-chief and the adversary proceeding. *See* Fed.R.Evid. 201; *In re Johnson,* 210 B.R. 134 (Bankr.W.D.Tenn.1997); *Matter of Alofs Manufacturing Co.,* 209 B.R. 83 (Bankr.W.D.Mich.1997). A review of Debtor's behavior in these matters follows.

**The Chapter 7 Bankruptcy Case**

The Debtor, James A. Ponzini, filed for relief under Chapter 7 of the Bankruptcy Code on November 14, 2000. M. Randy Rice was appointed trustee of the Debtor's bankruptcy estate (the "Trustee"). On Schedule I of Debtor's voluntary petition, he lists $1,500.00 of regular income from his business and a total of $1,154.00 in expenses associated with the operation of his business. On Schedule J to his petition, he lists a total of $1,995.00 of current monthly expenses which includes the business expenses of $1,154.00. Based on the schedules, Debtor's monthly expenses exceed his monthly income by $495.00. The Debtor's Statement of Financial Affairs indicated he had gross income of $30,000 in the year 1998, $30,000 in the year 1999 and $10,000 gross income from the beginning

of 2000 through the date of his bankruptcy filing. Debtor has not amended his plan to alter these amounts, and has not presented any evidence to the Court to show that Debtor's income or expenses have changed since he filed his petition.

On August 16, 2001, the Trustee moved to compel Debtor to turnover funds in the amount of $6,569.13 (the "Motion to Compel Turnover"). At the March 7, 2002 hearing on Debtor's Motion to Convert to Chapter 13, the Trustee testified that the funds he sought to recover were certain funds in the Debtor's Individual Retirement Account ("IRA") that constituted non-exempt assets the Debtor had failed to turn over to the estate. Specifically, the Debtor listed the value of his IRA on his amended bankruptcy petition as $10,000.00 with $7,715.00 listed as exempt property. In his Motion to Compel Turnover, Trustee stated that after reviewing the Debtor's records, he determined that the IRA was actually worth $14,284.13. The Trustee testified that he made demand for payment on both the Debtor and the IRA's custodian, A.G. Edwards, and moved for a Rule 2004 examination in an attempt to obtain more information on the A.G. Edwards IRA, including monthly statements. The Trustee testified that he learned from A.G. Edwards that the IRA had substantially declined from the time he started trying to get information on the IRA and the date of the 2004 exam. The Trustee testified that he could not get the non-exempt IRA assets turned over to the estate and never received the information and documentation he requested, although the Debtor never told him he was having trouble obtaining the information. The Trustee testified that his relationship with the Debtor was one of "non-cooperation." The Trustee also testified that during the Debtor's 2004 examination, he urged the Debtor to attend court proceedings.

The Debtor did not file a response to the Trustee's Motion to Compel Turnover. A hearing on the matter was scheduled for September 11, 2001 and continued to September 25, 2001. At the September 25, 2001 hearing, the Debtor failed to appear but R. Patt Pine, Esq. of the Dickerson Law Firm appeared and informed the Court that the firm had withdrawn from representing the Debtor in the adversary proceeding but failed to withdraw in the case-in-chief. Pine stated that the firm had no contact with the Debtor who was "uncooperative." To ensure the Debtor had notice of the law firm's anticipated withdrawal, the Court continued the hearing until October 11, 2001, and specifically ordered the Debtor to personally appear.

The Debtor did not appear in person on October 11, 2001, and the Court set a hearing for November 15, 2001 to consider and act upon the Trustee's Motion to Compel Turnover and Beard's complaint in the adversary proceeding (which is discussed later in this opinion). Again, the Court ordered the Debtor to appear in person. On October 15, 2001, the Court entered an order granting termination of the Dickerson Law Firm's representation. On November 15, 2001, the Debtor appeared without counsel and the Court continued the matter until December 4, 2001 to allow Debtor the opportunity to hire counsel. At the December 4, 2001 status hearing, Michael Knollmeyer, Esq. of Knollmeyer Law Office, P.A. appeared on behalf of Debtor and stated that the Debtor would most likely file a motion to convert in the near future. The Court then scheduled another status hearing for · January 10, 2002.

The Debtor moved to convert his bankruptcy case from Chapter 7 to Chapter 13 on December 14, 2001. The Trustee withdrew the Motion to Compel Turnover at the January 10, 2002 hearing due to the Debtor's motion to convert. At the January 10 hearing, Debtor's attorney was instructed to serve a Notice and Opportunity to Object to the other parties in connection with the Debtor's Motion to Convert to Chapter 13. A final status hearing was held on January 29, 2002. Beard filed his objection to Debtor's motion to convert on January 30, 2002, and the Court scheduled a hearing on the matter for March 7, 2002. At the March 7, 2002 hearing, at which the Debtor failed to appear, Laura Grimes, Esq. made an oral motion on behalf of Knollmeyer Law Office, P.A. to withdraw from Debtor's representation because she had not heard from Debtor since the firm had been retained, and because the firm would be seeking collection remedies against Debtor due to an insufficient retainer.

### The Adversary Proceeding

Beard filed an adversary proceeding against Debtor on April 19, 2001, seeking an exception to Debtor's discharge for Beard's claim and objecting to the Debtor's discharge. Beard's claim against Debtor is based on a default judgment entered against Debtor in favor of Beard in Pulaski County Circuit Court on June 28, 1999. Beard's lawsuit against Debtor arose out of a former business relationship between the two (the exact nature of which is disputed) and an agreement between the Debtor and Beard under which Debtor admittedly owes an unpaid balance. In connection with the lawsuit, a Notice of Deposition Upon Oral Examination was served upon the Debtor on November 6, 2000, and the Debtor was notified to appear for deposition on November 14, 2000. The day of the scheduled deposition, Debtor filed for relief under Chapter 7 of the Bankruptcy Code, and did not appear for the deposition.

Beard continued to try to ascertain the Debtor's financial position by conducting

two 2004 examinations, one on February 1, 2001 and one on April 5, 2001. In the course of these examinations, Debtor failed to produce certain bank statements and tax returns. Debtor asserted in his answer to Beard's complaint that he could not locate some of these records. A portion of the transcript from the April 5, 2001 examination was submitted into evidence with no objection at the March 7, 2002 hearing. The transcript reveals that Debtor failed to produce previously requested bank records that he had agreed to produce.

Debtor filed an answer to Beard's complaint on July 11, 2001, approximately 20 days after it was due. The Court subsequently entered a preliminary pretrial order requiring the parties to file and serve Pretrial Statements by August 3, 2001. Beard filed a pretrial statement on August 2, 2001. Debtor obtained an extension until September 7, 2001 to file a Pretrial Statement. In the meantime, his attorney, Michael E. Crawley, Esq. of the Dickerson Law Firm, moved to withdraw as attorney of record and the Court granted his motion. Debtor did not file a Pretrial Statement, and on September 21, 2001, a status hearing was scheduled for October 11, 2001 to coincide with the hearing on the Trustee's Motion to Compel Turnover. From that point on, status hearings on the adversary proceeding were combined with the hearings in the case-in-chief and continued as previously described in this opinion. At the December 4, 2001 status hearing, the Court extended the deadline for Debtor's Pretrial Statement in the adversary proceeding until December 20, 2001. Debtor's counsel, Michael Knollmeyer, informed the Court that Debtor intended to convert his case to Chapter 13, and requested the Court to clarify that Debtor did not have to file a Pretrial Statement if he converted to Chapter 13. The Court did so. Again, a final status hearing was held January 29, 2002, and the Court held that the adversary proceeding would remain pending until a decision was made on the Debtor's Motion to Convert to Chapter 13.

## DISCUSSION

■ Debtor's counsel asserts that he has an absolute right to convert to Chapter 13 under § 706(a), and that even if such right were not absolute, there is insufficient evidence to support a finding of bad faith on his part in filing the motion to convert to Chapter 13. Debtor's counsel also contends that debtor has met the requirements for filing under Chapter 13 as specified by 11 U.S.C. § 109(e).

Beard argues that § 706(a) does not grant a debtor an absolute right to convert, and that Debtor should not be allowed to convert due to his bad faith and abuse of the bankruptcy process as evidenced by his failure to appear at Court when ordered to and his lack of cooperation with the Trustee, his own attorneys and Beard. Beard further argues that Debtor's motion to convert should be denied because he cannot fund a chapter 13 plan in any case.

### Does § 706(a) Provide a Debtor with an Absolute Right to Convert?

Pursuant to § 706(a), a debtor may convert a chapter 7 bankruptcy case to a chapter 11, 12 or 13 bankruptcy case "at any time" provided the debtor has not previously converted the case. 11 U.S.C. § 706(a) provides:

(a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1307, or 1208 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

The courts are divided on the issue of whether § 706(a) grants the debtor an *absolute* right to convert from chapter 7 to another chapter provided the debtor is eligible to file under that chapter.[1] The Eighth Circuit has acknowledged the split in authority but has not ruled on the issue. *In re Little*, 253 B.R. 427, 429 (8th Cir. BAP 2000) (dismissing appeal as moot). This district is also divided on the issue of whether a debtor's right to convert is absolute under § 706(a). *See Martin v. Cox*, 213 B.R. 571 (E.D.Ark.1996) (District Court affirmed Bankruptcy Court's denial of motion to convert where debtor's bad faith and legal manipulations constituted "extreme circumstances"); *In re Widdicombe*, 269 B.R. 803, 807 (Bankr.W.D.Ark. 2001) (debtor has absolute right to convert regardless of circumstances); *In re Johnson*, 262 B.R. 75 (Bankr.E.D.Ark.2001) (extreme circumstances warranted denial of debtor's motion to convert).

Courts finding that a debtor has a one time absolute right to convert under § 706(a) hold that the plain language of the statute and its legislative history require that result. *See In re Widdicombe*, 269 B.R. 803, 807 (Bankr.W.D.Ark.2001); *In re Porras*, 188 B.R. 375, 377 (Bankr. W.D.Tex.1995).[2] Other courts (a majority according to at least one court[3]) hold that the plain language of § 706(a) does not provide a debtor with an absolute right to convert a chapter 7 case despite § 706(a)'s use of the phrase "at any time" and the legislative history's use of the term "absolute." *See In re Young*, 269 B.R. 816 (Bankr.W.D.Mo.2001); *In re Krishnaya*, 263 B.R. 63 (Bankr.S.D.N.Y.2001); *In re Marcakis*, 254 B.R. 77 (Bankr.E.D.N.Y. 2000); *In re Starkey*, 179 B.R. 687 (Bankr. N.D.Okla.1995). These courts and others also hold that the court has an inherit equitable power and duty to avoid an abuse of process where a debtor seeks to convert from chapter 7 in extreme circumstances amounting to bad faith. *See Martin v. Cox*, 213 B.R. at 573; *Young*, 269 B.R. at 824; *Krishnaya*, 263 at 69; *In re Spencer*, 137 B.R. 506, 512 (Bankr. N.D.Okla.1992)[4]. Having reviewed both

1. The debtor's right to convert under § 706(a) is limited by § 706(d) which provides that "[n]otwithstanding any other provisions of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." In the case of a conversion to a chapter 13 case, a debtor must meet the basic requirements of "who may be a debtor" under § 109(e) which generally allows individuals (and their spouses) with regular income to file under chapter 13 if their noncontingent, liquidated, unsecured and noncontingent, liquidated, secured debts do not exceed certain amounts.

2. *See also Street v. Lawson (In re Street)*, 55 B.R. 763, 765 (9th Cir. BAP 1985); *In re Mosby*, 244 B.R. 79, 83–84 (Bankr.E.D.Va. 2000); *In re Verdi*, 241 B.R. 851, 854–55 (Bankr.E.D.Pa.1999); *Nelson v. Easley (In re Easley)*, 72 B.R. 948, 952 (Bankr.M.D.Tenn. 1987); *In re Kleber*, 81 B.R. 726, 727 (Bankr. N.D.Ga.1987); *In re Caldwell*, 67 B.R. 296, 300–01 (Bankr.E.D.Tenn.1986); *In re Jennings*, 31 B.R. 378, 381 (Bankr.S.D.Ohio 1983.).

3. *See In re Young*, 269 B.R. 816, 824 (Bankr. W.D.Mo.2001). Although cases holding that a debtor has an absolute right to convert have frequently been described as the majority view *(e.g.*, see Bruce H. White, "Is a Debtor's Right to Convert Under § 706(a) Really Absolute?," 17 Am. Bankr.Inst. J. 28, 29 (Feb. 1998)), this Court's review of recent rulings on this issue reveal a larger number of courts adopting what was previously referred to as the minority view (*i.e.*, the view that a debtor does not have an absolute right to convert under § 706(a)), such that it is no longer clear which is the majority or minority view.

4. *See also In re Pakuris*, 262 B.R. 330 (Bankr. E.D.Pa.2001); *In re Dews*, 243 B.R. 337 (Bankr.S.D.Ohio 1999); and *Kuntz v. Shambam (In re Kuntz)*, 233 B.R. 580 (1st Cir. BAP 1999); and *In re Jeffrey*, 176 B.R. 4 (Bankr. D.Mass.1994).

lines of cases and their reasoning, this Court concludes that a debtor has no absolute right to convert under § 706(a) for the reasons explained in this opinion.

■ It is well settled that the plain meaning of a statute should be conclusive, provided it does not result in an interpretation clearly not intended by the statute's drafters. *See Widdicombe,* 269 B.R. at 807 (*citing Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). The plain meaning of § 706(a) does not provide debtors with an absolute right to convert a chapter 7 case to a case under chapters 11, 12 or 13. Section 706(a) does not contain the word "absolute" or any other word or phrase indicating that the right to convert is unequivocal. The courts finding that § 706(a) does provide an absolute right to convert have relied on the phrase "at any time" in § 706(a); however, it is more logical to interpret this phrase as referring to the debtor's right to convert at any point in the bankruptcy case's proceedings rather than granting the debtor a one-time absolute right to convert. "The words 'at any time' quite obviously mean that the debtor may seek a conversion at any time in the life of the case. However, 'at any time' is not the same as and does not mean 'regardless of circumstances.'" *Young,* 269 B.R. at 822 (*quoting Starkey,* 179 B.R. at 692).

Moreover, and most importantly, § 706(a) states that the court "may" convert a case at any time. The statute's use of the verb "may" rather than "shall" supports the view that the right granted by § 706(a) is presumptive rather than absolute. *See Marcakis,* 254 B.R. at 82 ("The very first words of section 706(a)—'The debtor may convert a case . . .'—is in the nature of the permissive."). In *Marcakis,* the Bankruptcy Court compared the permissive language of § 706(a) to the manda-tory language of 11 U.S.C. § 1307(b) which provides that the court *shall* dismiss a case under Chapter 13 upon request of the debtor at any time provided the case has not previously been converted. *Id.* The *Marcakis* court concluded that, "[S]imply put, 'shall' means 'must,' something mandatory, and 'may' connotes the permissive, the possible; and when turning to section 706, . . ., subsections (b) and (c) of section 706 speak of what a court 'may' do concerning conversion." *Id. See also In re Hauswirth,* 242 B.R. 95, 96 n. 2 (Bankr. N.D.Ga.1999) ("Congress demonstrated its ability to accord debtors a virtually absolute right in § 1307(b), . . . . The difference in the language in [§ 706(a) and § 1307(b)] supports a conclusion that they should be interpreted differently.").

The idea that the right granted by § 706(a) is absolute appears to be rooted in the statute's legislative history which provides:

> Subsection (a) of this section gives the debtor one absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already once been converted from chapter 11 or 13 to chapter 7, then the debtor does not have that right. The policy of the provision is that the debtor should always be given the opportunity to repay his debts.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 380 (1977), reprinted in, 1978 U.S.C.C.A.N. 5787, 5963, 6336; S.Rep. No. 95–989, 95th Cong., 2d Sess. 94 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5880. Notwithstanding the legislative history's description of the conversion right as "absolute," the Court is obliged to apply the statute, not its legislative history. The Bankruptcy Court for the Northern District of Oklahoma has described the proper role of legislative history in statutory interpretation as follows:

There has been much ado about when or if legislative history should be considered as an aid to interpretation of a statute. But this Court is not aware of any rule that legislative history, when considered, must be taken literally. At best, legislative history is a clue to the meaning of a statute; it is not the only clue, or even the single most important clue; and its summary, nontechnical character must always be kept in mind. *Starkey,* 179 B.R. at 692. Furthermore, the legislative history of § 706(a) also states that "The policy of the provision is that the debtor should always be given the opportunity to repay his debts...." S.Rep. No. 95–989, p. 94, U.S.Code Cong. & Admin.News 1978, p. 5880. The right to convert set forth in § 706(a) should be applied so that this policy is furthered rather than frustrated. *See Spencer,* 137 B.R. at 511–512. "Where conversion to Ch. 13 amounts to an attempt to escape debts rather than to repay them, the reason for the rule ceases—and there the rule ceases also." *Id.*

Finally, under the bankruptcy rules, the court has a role in determining whether conversion is appropriate. Federal Rule of Bankruptcy Procedure 1017(f)(2) requires that a conversion of a bankruptcy case under § 706(a) be made on motion filed and served as required by Rule 9013. Rule 2002(a)(4) requires that all interested parties be given 20 days' written notice of the hearing on conversion of a Chapter 7 case to any other chapter. Several courts have pointed out that the rules' requirements regarding motion, notice and a hearing indicate the § 706(a) right to convert is not absolute. "If the right to convert were absolute, there would be no need to file a motion, notify creditors, and have a hearing; those procedures would be useless and meaningless." *Young,* 269 B.R. at 822 (*citing Krishnaya,* 263 B.R. at 65). *See also Marcakis,* 254 B.R. at 82. Courts have routinely held that debtors must follow these procedures to implement a conversion and that a conversion is not effective upon notice as it is in a conversion of a case from chapter 12 or 13 to chapter 7.[5] *See In re Dipalma,* 94 B.R. 546, 549 (Bankr.N.D.Ill.1988) ("Taken together [Rules 1017(f)(2), 9013 and 2002(a)(4)] make it clear that the mere filing of a notice of conversion is insufficient to effect a conversion and that an order is necessary; otherwise, the provisions for the filing of a motion and for notice and a hearing would be meaningless.").[6]

■ Clearly, the plain language of § 706(a), especially when read in context with other sections of the Bankruptcy Code and Rules, does not grant a debtor an absolute right to convert a chapter 7 case. Rather, a debtor's right to convert is presumptive and should be granted if the court finds it is appropriate under the Bankruptcy Code.

■ Whether a motion to convert a chapter 7 case is appropriate depends on the circumstances of the case. *See Young,* 269 B.R. at 824 (*citing In re Pakuris,* 262 B.R. 330 (Bankr.E.D.Pa.2001) and *In re Tardiff,* 145 B.R. 357 (Bankr.D.Me.1992)). The Court can and should rely on its equitable powers to avoid abuse of process, and where extreme circumstances amounting to an abuse of process are present, conversion should be denied. *See Martin v. Cox,*

---

5. Rule 1017(a)(3) provides that a Chapter 12 or Chapter 13 case "shall be converted without court order when the debtor files a notice of conversion under §§ 1208(a) or 1307(a)."

6. *See also Calder v. Job, (In re Calder),* 973 F.2d 862, 867 (10th Cir.1992); *Young,* 269 B.R. at 822–823; *Krishnaya,* 263 B.R. at 65; *Starkey,* 179 B.R. at 698; *Spencer,* 137 B.R. at 511.

213 B.R. 571; *Young,* 269 B.R. at 828; *Krishnaya,* 263 B.R. 63; *Johnson,* 262 B.R. 75; *Sully,* 223 B.R. 582; *Starkey,* 179 B.R. 687; *Spencer,* 137 B.R. 506. Nevertheless, "[t]he Court's power to deny conversion in any case should be exercised sparingly." *See Young,* 269 B.R. at 828–829.

Some courts have held that denial of a § 706(a) motion to convert is also warranted where the conversion will serve no purpose or is otherwise not feasible and subject to reconversion under § 1307 or § 1112(b). *See In re Lilley,* 29 B.R. 442, 443 (1st Cir. BAP 1983) ("Bankruptcy Appellate Panel upheld bankruptcy court's denial of debtors' motion to convert because debtors' had insufficient income to fund Chapter 13 plan."); *Martin v. Cox,* 213 B.R. 571 (noting that debtor's ability to convert would have been conditioned on meeting all the eligibility requirements for filing a Chapter 13 case, including the requirement of good faith for confirmation of a plan); *In re Safley,* 132 B.R. 397, 399–400 (Bankr.E.D.Ark.1991) (denying conversion as "meaningless" due to previous discharge of debtor's debts).[7]

Having concluded that a debtor does not have an absolute right to convert a chapter 7 case under § 706(a), and that extreme circumstances evidencing a debtor's bad faith and abuse of the bankruptcy process, as well as futility in converting to Chapter 13, warrant denial of a debtor's motion to convert under § 706(a), the Court must determine the propriety of the Debtor's motion to convert in this Case.

### Should Debtor Be Allowed to Convert in this Case?

In this case, Debtor has abused the bankruptcy process throughout the administration of his case-in-chief under Chapter 7 and by moving to convert his case to Chapter 13. Debtor attempts to hold his creditors at bay simply by filing bankruptcy and doing nothing; specifically, Debtor has ignored court orders to appear in person, failed to file required pleadings, and refused to cooperate with the Chapter 7 Trustee and other parties.

Debtor chose to file a Chapter 7 case the same day as a scheduled deposition in connection with the state court default judgment entered in favor of Beard. By requesting relief under Chapter 7, it was Debtor's responsibility to then cooperate with the Trustee and the Court in the administration of his case. However, when hearings on both Beard's complaint in the adversary proceeding and the Trustee's Motion To Compel Turnover became inevitable after months of delay due solely to Debtor, Debtor sought to convert his case to Chapter 13 where he might retain his IRA and discharge Beard's debt without making any substantial payments.

It is clear from Debtor's schedules that he has no disposable income with which to fund a Chapter 13 plan. His monthly expenses exceed his monthly income by $495.00, and Debtor has failed to provide the Court with any evidence of any change in his income or expenses that would allow him to propose a Chapter 13 plan in good faith. The facts in this case illustrate that Debtor did not move to convert so that he might pay off his creditors, but rather, to stall any collection efforts by his creditors or the Chapter 7 Trustee.

### CONCLUSION

The Court finds that Debtor is not entitled to convert to Chapter 13 under

---

**7.** Courts adhering to the view that debtors have an absolute right to convert provide that the available remedy in such a case is to allow an opportunity for reconversion under § 1307 or § 1112(b). *See In re Finney,* 992 F.2d 43, 45–46 (4th Cir.1993). However, this approach has been criticized as "futile and wasted." *See Enterprise Nat'l Bank of Sarasota v. Wallace (In re Wallace),* 191 B.R. 925, 927 (Bankr.M.D.Fla.1995).

§ 706(a). Debtor's Motion to Convert to Chapter 13 is hereby DENIED.

**IT IS SO ORDERED.**