ELECTRONIC CITATION: 2004 FED App. 0007P (6th Cir.)
File Name: 04b0007p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re: JOHN FRANKLIN COPPER, )
)
Debtor. )
_____ )
)
ATHENA CHEN COPPER and the )
ESTATE OF SUMIKO YAMAOKA, )
)
Plaintiffs-Appellees, )
)
v. ) No. 04-8002
)
JOHN FRANKLIN COPPER, )
)
Defendant-Appellant. )
_____ )

Appeal from the United States Bankruptcy Court
for the Western District of Tennessee, Western Division, at Memphis.
Bankruptcy Case No. 02-23450-L, Adv. Case No. 02-0610.

Argued: August 4, 2004

Decided and Filed: September 24, 2004

Before: AUG, GREGG, and HOWARD, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Ted I. Jones, VAUGHN, HALL, JONES & VanDEVEER, Memphis, Tennessee, for Appellant. R. H. Chockley, Memphis, Tennessee, for Appellee. **ON BRIEF:** Ted I. Jones, VAUGHN, HALL, JONES & VanDEVEER, Memphis, Tennessee, for Appellant. Mimi Phillips, Memphis, Tennessee, for Appellee.

_____

**OPINION**

_____

J. VINCENT AUG, JR., Chief Bankruptcy Appellate Panel Judge.  The Debtor, John Franklin Copper, appeals the bankruptcy court's denial of his motion to convert his chapter 7 case to one under chapter 13.

## I.  ISSUE ON APPEAL

Whether the plain language of 11 U.S.C. § 706(a) provides a debtor with a one-time absolute right to convert a case filed under chapter 7 of the Bankruptcy Code to one under chapter 13.

## II.  JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal.  The United States District Court for the Western District of Tennessee has authorized appeals to the BAP.  A "final order" of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1).  For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted).

"[O]rders denying a debtor's request to convert from Chapter 7 to Chapter 13 pursuant to § 706(a) are final orders."  *Cabral v. Shamban (In re Cabral)*, 285 B.R. 563, 571 (B.A.P. 1st Cir. 2002); *see also Miller v. U.S. Trustee (In re Miller)*, 303 B.R. 471, 472 (B.A.P. 10th Cir. 2003) (order denying debtor's motion to convert from chapter 7 to chapter 13 is final, appealable order); *see generally Kuntz v. Shambam (In re Kuntz)*, 233 B.R. 580, 580-81 (B.A.P. 1st Cir. 1999).

Questions of law are reviewed de novo.  *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 696 n.1 (6th Cir. 1999).  Under a "de novo" standard of review, the reviewing court de-cides an issue independently of, and without deference to, the trial court's determination. *Razavi v. Commissioner,* 74 F.3d 125, 127 (6th Cir.1996).  "Whether a bankruptcy court

properly denied a debtor's request for conversion is a question of law requiring *de novo* review on appeal." *In re Kuntz*, 233 B.R. at 581 (citing *Martin v. Martin (In re Martin)*, 880 F.2d 857, 858 (5th Cir. 1989)); *In re Miller*, 303 B.R. at 473.

The bankruptcy court's factual findings are reviewed for clear error. Fed. R. Bankr. P. 8013 & 7052; Fed. R. Civ. P. 52(a). "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Mathews (In re Mathews)*, 209 B.R. 218, 219 (B.A.P. 6th Cir. 1997) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985)). A determination that a debtor has or has not acted in good faith constitutes a finding of fact reviewed under the "clearly erroneous" standard. *Alt v. United States (In re Alt)*, 305 F.3d 413, 419 (6th Cir. 2002); *Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123, 1127 (6th Cir. 1990).

## III. FACTS

The bankruptcy court's Memorandum Order entered November 3, 2003, denied the Debtor's motion to convert his chapter 7 case to one under chapter 13. The order also concluded that the Debtor is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(4)(A). The Debtor's appeal states, however, that the sole issue presented on this appeal is whether or not the bankruptcy court erred in failing to allow the Debtor to convert his case to one under chapter 13 pursuant to § 706(a) of the Bankruptcy Code. Therefore, we need not consider whether the bankruptcy court properly determined that the Debtor is not entitled to a discharge.

In making its decision to deny the Debtor's discharge, the bankruptcy court made a detailed review and analysis of the Debtor's pre- and post-petition conduct. The court relied on those same findings in making its determination that the Debtor's request to convert should be denied because it was not made in good faith.

Over the past nine years, the Debtor has taken evasive action to avoid paying his ex-wife, Athena Chen Copper, amounts she was awarded under the parties' divorce decree. The bankruptcy court's Memorandum Order outlines this history in detail. Borrowing substantially from the Memorandum Order, the facts of this case are as follows:

The Debtor is a Stanley J. Buckman Distinguished Professor of International Studies at Rhodes College in Memphis, Tennessee, a post he has held since 1984. He is a world-renowned expert on China and Taiwan, has authored some 25 books on Asian affairs, and travels to Taipei frequently as the guest of various educational and governmental agencies. The Debtor's income from Rhodes College for 2003 was $89,000. In addition, the Debtor received income from various activities such as teaching, lecturing and writing.

The Debtor and Ms. Copper were married in 1967 and divorced on October 15, 1993. In the divorce proceeding, Ms. Copper was awarded $2,000 per month in alimony *in futuro* and interests in several annuity contracts. In addition, the Debtor was ordered to pay Ms. Copper's parents the sum of $70,657.60, representing sums found to be taken from Ms. Copper's parents, and interest accrued on those amounts.

In February 1997, Ms. Copper learned that the Debtor had converted the value of some of the annuity contracts awarded to her, some $152,211.65, to his own use. The Debtor was found to be in civil contempt of court and ordered to return the misappropriated funds plus attorney fees to Ms. Copper. The Debtor's efforts to prevent Ms. Copper from collecting the amounts due to her include the following:

In January 1997, Ms. Copper had a garnishment issued directed to Rhodes College seeking to collect the amounts owed to her from the Debtor's salary. The Debtor responded by filing a Motion to Set Installment Payments on Garnishment. The motion was granted, but the Debtor never made any installment payments.

On July 1, 1997, the Debtor filed a chapter 7 petition, which was dismissed on July 23, 1997, upon the Debtor's failure to timely complete the filing of documents.

On August 12, 1997, the Debtor filed his second chapter 7 petition. That petition was dismissed on September 29, 1998, when the bankruptcy court refused to exercise jurisdiction over the case pursuant to 11 U.S.C. § 305(a)(1), upon a finding that the case was "in essence, a two-party dispute."

On July 12, 2000, the Debtor filed his third bankruptcy petition. During the twenty-two months between the dismissal of the second petition and the filing of the third petition, the Debtor did not make any payments to Ms. Copper. During that same time period, Ms.

Copper again sought payment through garnishment proceedings, the Debtor again responded with a motion to set installment payments, and as noted again filed a petition for chapter 7 relief. That petition was dismissed on August 25, 2000, when the Debtor failed to appear for the meeting of creditors.

Ms. Copper again attempted to dispose of the state court motion to set installment payments. However, on December 6, 2000, before the state court motion could be heard, the Debtor filed his fourth bankruptcy petition under chapter 7. That case was also dismissed on February 15, 2001, when the Debtor again failed to attend the meeting of creditors.

After dismissal of the fourth bankruptcy petition, Ms. Copper was finally successful in getting a hearing on the Debtor's state court motion to set installment payments. The motion was denied and the garnishment reinstated on September 28, 2001. The Debtor responded by filing a fifth petition under chapter 7 on November 8, 2001. That case was dismissed on January 8, 2002, when the Debtor failed to file required documents to complete the filing.

On January 17, 2002, Ms. Copper had the garnishment reissued and, on February 25, 2002, the Debtor filed the instant chapter 7 case, his sixth bankruptcy petition. Ms. Copper filed the adversary action in this case asserting that the debts owed to her are nondischargeable pursuant to 11 U.S.C. § 523(a)(5), (6) and/or (15) and that the Debtor's discharge should be denied pursuant to § 727(a)(4)(A). After the adversary case had been pending for fourteen months, on the Friday before that trial was to start on the following Monday, the Debtor filed his motion to convert his case to one under chapter 13.

The bankruptcy court held its ruling on the motion to convert until the conclusion of the submission of evidence on the dischargeability issues.

In the Memorandum Order the bankruptcy court states that "[i]n the course of trial, the Court discovered a number of serious false statements in the schedules and statement of financial affairs filed by the Debtor in this case." *Copper v. Copper (In re Copper)*, Ch. 7 Case No. 02-23450-L, Adv. No. 02-0610, slip op. at 5 (Bankr. W.D. Tenn. Oct. 31, 2003). The next four pages of the bankruptcy court's Memorandum Order highlight the false

statements and inconsistencies made by the Debtor in this case both in his schedules and during his trial testimony.[1] Even though the Debtor gave several explanations for the multitude of false statements and inconsistencies, the bankruptcy court determined that none of the explanations was credible. The bankruptcy court stated:

> The Court found the Debtor to be a very difficult witness. He refused, for example, to acknowledge the authenticity of his signature on his bankruptcy petition or on a Consent Order entered in the state court dealing with the payment of [two creditors], claiming that the signatures could have been stamped. He claimed that he does not know what Chapter 7 is, even though he has filed five Chapter 7 petitions. At times, the Debtor seemed to be calculating the likelihood that his statements could be verified. At other times he seemed to be inventing excuses and explanations on the spot. The Debtor seemed to have virtually no appreciation or respect for the gravity of the proceedings initiated by him in the Bankruptcy Court. Given the very high level of the Debtor's education and stature within the educational and international communities, the Court found the Debtor's cavalier attitude and lack of candor to be surprising and offensive.

*Id.* at 10. Apparently, the Debtor's bad conduct also had as negative an impact on the divorce proceedings as it has had on the proceedings in the bankruptcy court. During the two-week trial involving the divorce, the trial judge made the following observations:

> Extensive proof was taken over a two week trial, most of which had to do with the property owned by the parties and the

---

[1]Some of the Debtor's false statements include failing to schedule substantial assets, failing to disclose his full income and scheduling debts he did not owe. For example, according to the bankruptcy court's calculations, the Debtor was awarded property (both real and personal) valued at more than $290,000 under the Final Decree. By contrast, the schedules filed by the Debtor in the present case represent that the Debtor has total assets of only $3,330.00. As noted by the bankruptcy court, the Debtor had been continuously employed as a professor at Rhodes College during the nine years between the Final Decree and the filing of the present case. The Debtor's schedules also list liabilities of $234,417.01. Of that amount, $200,000.00 appears to represent amounts owed to the Appellee. At trial, the Debtor admitted that two other debts listed, in respective amounts of $8,700.00 and $15,000.00, were no longer owed. The Debtor's schedules also state that he is divorced, when in fact he remarried in 1995. The schedules include liabilities owed by his current spouse, but disclose neither her assets nor her $40,000.00 annual income.

> extent to which the defendant [the Debtor] had infringed upon the marital property by secreting accounts in banks and other places and not disclosing the amount of marital assets to the plaintiff. The testimony offered by the defendant was riddled by inconsistencies to the extent that the Court is unable to believe any of the testimony offered by the defendant in his own behalf.

*Id.* at 3 (quoting Memorandum Opinion of the trial judge in the divorce proceedings between Debtor and Ms. Copper).

The Panel also notes that at oral argument, the Debtor's counsel advised the Panel that his client was the most sanctioned debtor in the district and that counsel himself is probably the most sanctioned attorney in the district. Counsel did not attempt to persuade the Panel that any sanctions received by either himself or his client were unjustified but presented the statement as if it were a badge of honor. Counsel further conceded that during the Debtor's testimony given at the trial of this matter his client was "swimming around the truth." Then, as if to clarify, counsel advised this Panel that his client had in fact told some "egregious lies" during the trial of the adversary proceeding. Counsel's admissions leave this Panel wondering whether the Debtor was even swimming in the same pool as the truth. Obviously, the bankruptcy court's findings regarding the Debtor's complete lack of credibility are well founded.

In making the decision to deny the Debtor's motion to convert, the bankruptcy court stated:

> The motion was filed the Friday before trial commenced on Monday, some seventeen months after the filing of the Chapter 7 petition. The Court does not believe that the Debtor has had a sudden change of heart and now wants to repay [Ms.] Copper. To the contrary, his testimony at trial indicates that he never intends to repay her unless forced to do so. The Court believes that the Debtor and his counsel wanted to avoid the determination of the dischargeability of these debts and the entitlement of the Debtor to a discharge. The Debtor may also have hoped to obtain a discharge of his obligations by paying less than the full amount owed. The Debtor will not be permitted to manipulate the Bankruptcy Code in this manner.

*Id.* at 15. The bankruptcy court then went on to in essence find that it would be futile to convert the Debtor's case to one under chapter 13 because a chapter 13 plan must be proposed in good faith and the Debtor was not capable of making such a proposal:

> The pattern of abuse exhibited by the Debtor over the past nine years leaves little room for doubt that the Debtor's proposal was not made in good faith. . . . Further, the Court has little confidence that any schedules the Debtor would file in connection with a converted case could be relied upon to determine whether the Debtor's plan meets the best interests of creditors' test or whether the Debtor has proposed to devote all of his disposable income to his repayment plan. . . . [A] Chapter 13 plan for this Debtor would be little different than the installment payment plans he has sought and obtained in another court but failed to honor.

*Id.* at 15-16. Based on these findings, the bankruptcy court denied the Debtor's motion to convert and the Debtor filed his appeal.

Stated as succinctly as possible, the Debtor's argument in this case is that no matter how reprehensible or abhorrent his actions have been, he still has an absolute, one-time right to convert his chapter 7 case to a chapter 13 case. We do not agree.

## IV.  DISCUSSION

The Bankruptcy Code provides:

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title.  Any waiver of the right to convert a case under this subsection is unenforceable.

11 U.S.C. § 706(a).

Federal Rule of Bankruptcy Procedure 1017(f)(2) provides that "[c]onversion . . . under §[] 706(a), . . . shall be on motion filed and served as required by Rule 9013." Bankruptcy Rules 2002 and 9013 provide that conversion from chapter 7 to chapter 13 must be made by a motion and that parties are entitled to 20 days' notice of the motion. Fed. R. Bankr. P. 2002(a)(4) and 9013.

There are two lines of cases interpreting § 706(a). One line does in fact hold that the debtor has an absolute right to convert from a chapter 7 to a chapter 13 providing that (i) the case has not already been converted from a chapter 11, 12 or 13 and (ii) the debtor meets the financial eligibility requirements of § 109(e) to be a chapter 13 debtor. These cases find that the bankruptcy court does not have the power to deny conversion. *Pequeno v. Schmidt*, 307 B.R. 568 (S.D. Tex. 2004) (providing detailed outline of cases on both sides of the issue). The Bankruptcy Appellate Panel for the Tenth Circuit has noted:

> The stated policy behind § 706(a) is to provide the debtor with "the one-time absolute right of conversion . . . [in order to give] the debtor . . . the opportunity to repay his debts. . . ." S. Rep. No. 95-989, at 94 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5880. Pursuant to the plain language of § 706, a debtor may convert at any time if the following two elements are met: (1) the debtor has not previously converted his case; and (2) the debtor meets the eligibility requirements of the chapter to which the debtor wishes to convert.

*Miller v. U.S. Trustee (In re Miller)*, 303 B.R. 471, 473 (B.A.P. 10th Cir. 2003) (alteration in original); *see also Martin v. Martin (In re Martin)*, 880 F.2d 857, 858 (5th Cir. 1989) (right to convert is absolute);[2] *see also In re Gibbons*, 280 B.R. 833 (Bankr. N.D. Ohio 2002) (same). The Debtor before this Panel has not previously converted his case and the

---

[2]Interestingly, the Fifth Circuit case of *In re Martin* has been cited by both sides of the argument, probably because of the following language:

> [T]he cases also support our conclusion that a debtor's right to convert under section 706(a) is, as indicated by the statute and its legislative history, an absolute one. *The courts refuse to interfere with the right in the absence of extreme circumstances*. Because Martin does not allege facts which if true would provide an adequate ground to deny the debtor's motion to convert, we agree with the district court's conclusion that the bankruptcy court erred in denying the conversion.

*In re Martin*, 880 F.2d at 859 (emphasis added). Arguably, the above emphasized language leaves open the question of whether the Fifth Circuit would find the right to convert is absolute or is subject to the limited exception that it takes extreme circumstances for the right to be denied.

Appellees do not dispute that the Debtor meets the income and expense limitations of § 109(e). However, the bankruptcy court determined that the Debtor was not entitled to convert his case due to his bad faith.

*In re Miller* finds that the debtor there had an absolute right to convert even though there was substantial evidence of abuse of the system. The panel's resolution in *In re Miller* indicated that the best place to deal with abuse of process caused by the conversion was during the confirmation phase of the debtor's plan. *Id.* at 475 (citing *Mason v. Young (In re Young)*, 237 F.3d 1168 (10th Cir. 2001). This line of cases also finds that the converted case can be reconverted on the basis of the debtor's bad faith.

> While one might consider it frivolous to convert only to reconvert, such a procedure allows one to comply with both the Congressional mandate of Section 706(a) and the duty to protect the bankruptcy process from abuse.

*Pequeno*, 307 B.R. at 580.

The other—and in our opinion, more reasoned—line of cases, holds that the right to convert is not absolute and that in extreme circumstances conversion can be denied. "[T]he trend in other jurisdictions, if indeed one is discernable, is to judicially recognize an exception to the right to convert in situations of bad faith." *Id.* at 578. *See Kuntz v. Shambam (In re Kuntz)*, 233 B.R. 580, 585 (B.A.P. 1st Cir. 1999) (debtor's one-time right to conversion may be denied in "extreme circumstances" constituting bad faith); *Martin v. Cox*, 213 B.R. 571, 572-73 (E.D. Ark. 1996) (conversion denied due to falsification of documents, failure to disclose assets and other information, false representations in another court, and other misconduct); *In re Wampler*, 302 B.R. 601, 605-06 (Bankr. S.D. Ind. 2003) (conversion denied due to factors including timing of motion, motive for motion, debtor not being forthcoming with court and creditors, and lack of need for chapter 13); *In re Oblinger*, 288 B.R. 781, 785 (Bankr. N.D. Ohio 2003) (court "tends to agree with those cases holding that conversion might . . . be denied under 'extreme circumstances,' such as a debtor's abuse of process," but finding that such circumstances did not exist in that case); *In re Johnson*, 262 B.R. 75 (Bankr. E.D. Ark. 2001) (acknowledging opposing precedent but finding that more persuasive view is that conversion from chapter 7 to chapter 13 can be denied in extreme circumstance for lack of good faith as an abuse of

process); *In re Lesniak*, 208 B.R. 902, 906-07 (Bankr. N.D. Ill. 1997) (conversion denied because schedules were "fraught with discrepancies" and because of lack of motivation to pay debts); *In re Thornton*, 203 B.R. 648, 652-53 (Bankr. S.D. Ohio 1996) (conversion denied due to omissions of assets, false testimony, and prepetition conduct); *see also Finney v. Smith (In re Finney)*, 992 F.2d 43, 45 (4th Cir. 1993) (debtor's fraud and filing of motion to convert only after discharge was denied justified immediate reconversion to chapter 7); *In re Eugene Alexander, Inc.*, 191 B.R. 920, 923-24 (Bankr. M.D. Fla. 1994) (finding that chapter 7 debtor has right to convert to chapter 11 but conversion should not be permitted if "cause" exists to convert case back to chapter 7 or to dismiss. "To permit conversion to Chapter 11 in those circumstances would be futile and a wasted act.").

While the United States Court of Appeals for the Sixth Circuit has not directly addressed this issue, the denial of a motion to convert for bad faith is consistent with Sixth Circuit precedent. For example, the Sixth Circuit has held that a bankruptcy court may dismiss a chapter 13 petition that was not filed in good faith. *Alt v. United States (In re Alt)*, 305 F.3d 413, 418-19 (6th Cir. 2002). "If a chapter 13 petition may be dismissed for lack of good faith, it is logical to conclude that conversion from chapter 7 to chapter 13 may also be denied in the absence of good faith." *In re Brown*, 293 B.R. 865, 870 (Bankr. W.D. Mich. 2003) (after discussing *Alt*). Accordingly, this Panel agrees with the court in *Brown* and holds that "[i]f, upon its review of the facts, the bankruptcy court finds that the debtor's request for conversion was made in bad faith or represents an attempt to abuse the bankruptcy process, the court may deny the requested conversion." *Id.*

The Sixth Circuit has adopted a "totality of the circumstances" analysis in evaluating whether a debtor should be permitted to commence a chapter 13 case, *Alt*, 305 F.3d at 419 (quoting *Society Nat'l Bank v. Barrett (In re Barrett)*, 964 F.2d 588, 591 (6th Cir. 1992)), and the same analysis should apply in evaluating whether a debtor should be permitted to convert a case to chapter 13, *Thornton*, 203 B.R. at 652. The Sixth Circuit in *Alt* listed some of the factors that a bankruptcy court might find appropriate to be considered under the facts of a particular case, and stated: "We have also emphasized that good faith is a fact-specific and flexible determination." *Alt*, 305 F.3d at 419 (citing *Metro Employees Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah)*, 836 F.2d 1030, 1032-33 (6th Cir.1988)).

The bankruptcy court in the appeal before this Panel found that the motion to convert was motivated solely by a desire to avoid a determination that the Debtor was not entitled to a discharge (or that his obligations to Ms. Copper are nondischargeable) and not by a desire to repay his creditors, and that the motion thus represented an improper attempt to "manipulate the Bankruptcy Code." *In re Copper*, Ch. 7 Case No. 02-23450-L, Adv. No. 02-0610, slip op. at 15. The court also relied on the "pattern of abuse exhibited by the Debtor over the past nine years," the belief that "the Debtor has always had the ability to repay the obligations owed to [Ms.] Copper," and misrepresentations in the Debtor's schedules. *Id.* at 15-16. These findings are clearly supported by the evidence. Indeed, at argument counsel for the Debtor all but admitted a lack of good faith, relying solely on his legal position that good faith is irrelevant under § 706(a) of the Code. Accordingly, those findings were not clearly erroneous and support the bankruptcy court's conclusions that the Debtor's actions constitute bad faith and abuse of process such as will justify the denial of a motion to convert under § 706(a).

In deciding that this second line of cases is the one that is the more well-reasoned and the one that this Panel will follow, it is not enough that we determine that our ruling is the best one to prevent abuse of the bankruptcy system. We must also consider the Debtor's argument that the plain language of § 706(a) does not permit us to adopt this position but provides the Debtor with a one-time absolute right to convert. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S. Ct. 963, 969 (1988) (bankruptcy courts cannot use their equitable powers to override the plain language of a provision of the Bankruptcy Code). We do not agree that the language of § 706(a) has such an effect.

As one bankruptcy court has noted, neither the language of the statute itself nor the legislative history gives a debtor the absolute right to convert. *See In re Starkey*, 179 B.R. 687, 691-92 (Bankr. N.D. Okla. 1995). We agree with the cases finding that the phrase in § 706(a) providing that the debtor may convert "at any time" refers to a time frame. The phrase does not mean "regardless of circumstances." *Id.* at 692; *In re Oblinger*, 288 B.R. at 785 (by use of the phrase "at any time," Congress disavowed a time component in determining a motion to convert from chapter 7 to chapter 13).

Further, the language protecting the debtor from any waiver of the right to convert "is meant to prevent frustration of the Bankruptcy Code by standard provisions in contracts of adhesion . . . .  This sentence does not apply to any impairment of the right to convert for reasons of the debtor's own misconduct or comparable circumstances, more in the nature of estoppel than waiver." *In re Starkey*, 179 B.R. at 692

Finally, it is also relevant that § 706(a) uses the word "may" meaning "might" or "used to express possibility" or "used to express opportunity or permission." *Random House Unabridged Dictionary* 1189 (2d ed. 1993).  If Congress had intended to leave the bankruptcy courts with absolutely no discretion in the matter, it would have used the more mandatory phrase of "*shall* be able to convert."  *See* 11 U.S.C. § 1307(b) ("On request of the debtor at any time . . . the court *shall* dismiss a case under this chapter."); *In re Ponzini*, 277 B.R. 399, 404 (Bankr. E.D. Ark. 2002); *In re Marcakis*, 254 B.R. 77, 81-82 (Bankr. E.D.N.Y. 2000); *In re Hauswirth*, 242 B.R. 95, 96 n.2 (Bankr. N.D. Ga. 1999).

Therefore, we find that the plain language of § 706(a) does not grant an absolute right to convert.

The language that specifically refers to debtors having a one-time absolute right to convert appears only in the legislative history.  *In re Miller*, 303 B.R. at 475 (citing cases).  Courts relying on the legislative history, however, must read and interpret the history as a whole.  That language states:

> Subsection (A) of this section gives the debtor the one-time absolute right of conversion of a liquidation case to a reorganization or individual repayment case.  If the case has already once been converted from chapter 11 or 13 to chapter 7, then the debtor does not have that right. *The policy of the provision is that the debtor should always be given the opportunity to repay his debts*, and a waiver of the right to convert a case is unenforceable.

S. Rep. No. 95-989, at 94 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5880 (emphasis added).  Thus, the legislative history suggests a one-time absolute right to convert but that phrase cannot be implemented without also looking at the policy, stated in that same legislative history, behind permitting the debtor an absolute right to convert.  That is that

"the debtor should always be given the opportunity to repay his debts." The bankruptcy court here found that the Debtor never intends to pay his debt to Ms. Copper and that he is abusing the bankruptcy system to thwart all of her efforts to attempt to collect the debt. As evidence of this, the bankruptcy court points out that the Debtor has been given the opportunity in the past to make payments under installment plans and utterly failed to comply with those plans. Permitting the Debtor in this case to convert to a chapter 13 turns on its head the policy reason for providing a debtor with such a right. "The rationale for readily granting conversion under § 706 is to encourage debtors to repay their debts; however, Congress did not intend to allow or condone abuse of the bankruptcy process." *In re McNallen*, 197 B.R. 215, 219 (Bankr. E.D. Va. 1995) (citing *In re Starkey*, 179 B.R. at 694 ("This Court will grant conversion under § 706 readily–but not so readily as to allow and condone abuse.")). Neither will this Panel permit such abuses of the bankruptcy system as those attempted by this Debtor.

## V. CONCLUSION

The decision of the bankruptcy court is **AFFIRMED**.